TARLETON vs. GOLDTHWAITE'S HEIRS & ADM'R.

1.  In chancery cases, when the decree is voluntarily executed by the parties, and the complainant receives the money decreed to him, he may nevertheless prosecute an appeal.
2.  Memoranda from books, and written documents, when produced in response to a call in the bill, are evidence in the cause, but not necessarily conclusive evidence of the facts which they tend to establish.
3.  Where the bill alleges an indebtedness on the part of the defendant's intestate to complainant, for rents received and not paid over or accounted for, and charges that defendant has in his possession the documents showing such indebtedness, and calls for their production; and the documents, when produced, tend to show that no indebtedness whatever existed, the complainant may nevertheless establish his claim by other evidence.
4.  Where one tenant in common, having obtained a conveyance from his co-tenant for the purpose of mortgaging the entire estate, and bound himself to reconvey one half of the land after the mortgage is raised, rents out the premises, and collects the rents, he becomes, as to these rents and profits, a trustee by implication for his co-tenant, and when the latter seeks an account of them, the statute of limitations of six years will bar him.
5.  When the complainant seeks an account of rents received by the defendant, his co-tenant, and not paid over or accounted for, and proves the contracts of rent made by him, fixing the amounts &c., this is sufficient, prima facie, to charge the defendant with the entire amount, and to throw on him the onus of showing what he did not receive.
6.  Where the defendant receives rents under an implied trust for his co-tenant, he is chargeable with interest on the amount found in his hands from the time of its receipt.

Appeal from the Chancery Court of Mobile.

Heard before the Hon. J. W. Lesesne.

This bill was filed by the appellant against the appellees, seeking a re-conveyance of one half of a certain lot in the city of Mobile to the complainant, and for an account of the rents of the same for a series of some nine or ten years. The bill is filed against the administrator and heirs of Henry Goldthwaite, deceased, alleging that previous to the 29th day of April, 1837, the complainant and Henry Goldthwaite were tenants in common of a certain lot of land, particularly described, in the city of Mobile, and on the said 29th day of April, at the instance and request of the said Goldthwaite, who was desirous of effecting

a loan from the Life and Trust Company of Mobile, and wished to have the entire legal title in himself, for the purpose of mortgaging the same in order to effect the loan aforesaid, the said complainant, at the instance and request of the said Goldthwaite as aforesaid, conveyed to the said Golthwaite his undivided half of the said premises, and at the same time took from the said Goldthwaite the following instrument : '

"George W. Tarleton has this day conveyed to me, by quitclaim deed, all his title to the house and lot on the west side of Royal street between Dauphin and St. Francis streets, 24 feet front by 117 feet deep, between houses of J. Perine, which lot I am about to mortgage to the Life Insurance and Trust Company : Now be it known that I am bound to raise all encumbrances which shall be created by me on said house and lot, and to re-convey one undivided half of the same to the said George W. Tarleton, whenever the mortgages created by me are raised. Mobile, 29th April, 1837.

(Signed) HENRY GOLDTHWAITE."

The bill charges that, after the said conveyance to the said Goldthwaite, he took the entire management and control of the premises, and rented them out, and collected the rents thereof, as if they were his; that for the year 1838 he accounted to complainant for the half of said rents, but since that time no account has been rendered, and no rent paid complainant, up to the death of the said Goldthwaite ; that complainant never called upon the said Goldthwaite to account in his life time, partly because of the great confidence he had in the said Goldthwaite, that he would account fairly, and partly because during most of the period above named the said Goldthwaite was under liabilities for the said complainant and the late mercantile firm of Tarleton & Bullard ; that a short time before the death of the said Henry Goldthwaite, complainant called upon him for a settlement and account, with which requests the said Goldthwaite promised to comply, but was prevented from doing so by his death, which occurred in the autumn of 1847.

The bill also charges that said Goldthwaite, in his lifetime, kept an account of the receipts of said rents, and of the facts appertaining thereto, and that his administrator, John A. Campbell, has the evidences in his possession ; that the said Campbell admits the interest claimed in the land by the complainant, but does

not admit an indebtedness for rents received and not accounted for by his intestate ; and the bill is therefore filed to establish the complainant's claim to an equal portion of the rents since 1838, as well as for a re-conveyance to complainant of the one half of the said premises. The bill prays that such a conveyance be decreed to be made ; that such an account be taken of the rents received since November, 1838, the one half of which be decreed to complainant ; and to this end the bill prays that " the said John A. Campbell, as administrator as aforesaid, may answer and discover and produce any and all papers and memoranda in his possession, found among the papers of the said Henry Goldthwaite, deceased, respecting the right or claim of complainant to one undivided half of the said house and lot, or of the rents and profits of the same, or showing the amount of rents and profits of the same received by the said Henry Goldthwaite from the first of November, 1838, up to the time of his death " &c.

The answer of John A. Campbell, the administrator, admits the liability of the heirs to make conveyance of the premises demanded, but denies any indebtedness on the part of his intestate for rents received and unaccounted for ; and pleads the statute of limitations of six years, and also that of three years. Defendant states that he has a schedule of the property of the intestate, made in his own hand-writing, in which appears as belonging to his said intestate the entire rent of said property up to the 1st of November, 1847 ; and in the same schedule the said intestate makes a statement of his debts, and no entry of any debt to the complainant appears in such schedule.

The defendant, in response to that portion of the complainant's bill calling for papers and memoranda from the books &c. of the said intestate, propounds three papers, two of which appear to be mutual receipts in full, prepared apparently with a view to a full and final settlement between the parties, and the other is in the following words :

" The undersigned, after the 1st of November, is to hold the house and premises No. 28 Royal street as the joint property of himself and Tarleton & Bullard, one half to each, and the rents accruing after that period are to be jointly divided. Mobile, May 7, 1847."

The receipts above mentioned bear the same date as the pa-

pers just above set forth. The answer states that there appears no evidence on the books of the intestate that the complainant had any interest in the rents of the premises since 1839, and no account of the expenses of the property, and this circumstance is relied upon as persuasive to show that the complainant had no interest in said rents; that said intestate was in easy circumstances, and prompt in his dealings and business habits; and the complainant, during the greater portion of the time for which the rents are demanded, was in embarrassed circumstances, and professing himself to be insolvent; that the said complainant is a careful, cautious man in his habits; and all these facts are also relied upon as pursuasive to show that no indebtedness exists from the intestate to the complainant for the rents aforesaid.

The answer further states that the amount of money received for the rent of the said premises was as follows: For 1840, tenant M. J. McRea, $300 00; 1841, tenant Sally Bryant, $600 00; 1842, tenant Willy Harbin, $573 78; 1842, tenant Black Barbee, $56 50; 1843, tenant, Walker, $625 00; and that for the rent of 1844, 1845 and 1846, he holds the notes of S. W. Allen, Christopher Heart and wife, and Jane Ledyard; and for the year 1848 Mrs. Pattison's at the rent of $550 00; also, that among the papers of the said Goldthwaite there are the following papers, apparently for the rent of the said premises: Four notes of N. & J. Tisdale for $207 20; ten notes of one Whorrall for $25 each; four notes of Moses Pearson for $25 each; and seven notes of a man whose name is illegible, but for how much the answer does not state.

The answer of the heirs by their guardian *ad litem* is nearly to the same effect as the answer of the administrator.

The proof upon the hearing was, that the said Goldthwaite was relieved from all liability for the said Tarleton or Tarleton & Bullard as early as the year 1842. There was other testimony on the hearing, but this is all that is deemed necessary to be stated in this connection, in order to an understanding of the facts of the case.

The cause was submitted for final decree, on bill, answers, exhibits and proof; and the Chancellor rendered his decree ordering a re-conveyance of one half of the premises in question to the said Tarleton, and that he was entitled to an account for the rents and profits of the same for six years next preceding

the filing of the bill, not counting six months of the administration of the said J. A. Campbell and the period between the intestate's death and grant of letters of administration to the defendant as part of that period.

The court directed the master to take an account, to ascertain the amount of the rents received, and whether any and what were lost by the negligence or wilful default of said Goldthwaite, and what amount; also, what papers remained on hand as evidence of debt for rent. The master was also instructed to make allowances for repairs, and valuable and permanent improvements, and necessary and proper expenses.

Further testimony was taken before the master, the result of which appears in his report, and may be thus stated. The rent contracts from 1842 to 1847 inclusive, amounted to $4950 00. Of this amount there was collected in money the sum of $2248 78, and of this sum there was expended for repairs, insurance, taxes &c. on the property, the sum of $1062 80. The master also reported on hand, in the shape of notes given for rent of said premises, in the hands of said administrator and uncollected, the amount of $1300.

Exceptions were filed to this report, all of which were overruled by the master, and his decision sustained by the Chancellor, except as to one matter, viz., as to the allowance made the defendant for repairs, in the absence of proof showing the actual disbursements by the said intestate in his life-time. This exception prevailed, and the matter was referred back to the master to report how much the said intestate actually disbursed for expenses, repairs, &c. The master made another report, by which he ascertains that the amount of expenses for repairs, for the period aforesaid, was $164 20, instead of $395, as reported by the first account, and makes a difference in the final result of the account of $105 40 in favor of the complainant.

The exceptions taken to the report of the master and which were overruled by the master and Chancellor, were :

1. That no interest was allowed on the amount of money collected by the said intestate from the time when the money was collected by him.

2. That it appears from the report that the premises were rented out by said intestate during the years inquired of for the sum of $4950; that he had collected the sum of $2248 78,

and had rent notes and other evidences of rent on hand only amounting to the sum of $1300, leaving a balance of $1351 22 wholly unaccounted for; and the master did not charge the administrator with any part of that balance.

The Chancellor rendered a final decree ordering the deed to be made as aforesaid, and ordering the defendants to pay to the complainant the sum of $937 27, being the amount ascertained by the master in his said report.

From this decree the complainant has appealed, and here assigns for error:

1. In limiting the complainant's recovery, in the order of reference in the first decree rendered, to six years next preceeding the filing of the complainant's bill.

-2. In not allowing interest on the money collected by the intestate from the time it was so collected.

3. In not charging the defendant for that portion of the rents proved to have been earned, and not accounted for by the intestate or the defendants.

A motion is made on the part of the appellees to dismiss the appeal, because the decree has been complied with by them before the appeal taken, and because the appellant had received both the deed and money decreed to him by the court below, and it is here insisted that he has thereby waived his appeal.

HOPKINS & JONES, for appellant:

1. This is a clear case of a direct, express trust, created by contract and act of the parties, peculiarly cognizable in equity. It was a continuing, recognized trust. Goldthwaite was trustee, and Tarleton *cestui que trust*. The authorities are numerous, full, and direct, to the point that, in such trusts, the statute of limitations does not apply, as between the trustee and his *cestui que trust*.—Hill on Trustees 263, 264; Lewin on Trusts (24 Law Library) 611; Wedderburn v. Wedderburn, 4 Mylne & C. (18 En. Ch. R.) 41, 52; Coster v. Murray, 5 Johns. Ch. R. 522, 531; Pinkston v. Brewster, Solomon & Co., 14 Ala. 315, 321; Wisner v. Barnett, 4 Wash. C. C. R. 632.

2. The trustee was bound to account for the rents. It was proved that he rented out the property, and the amount for which he rented it each year was shown. This was certainly sufficient to charge him, and to throw upon him the burden of

proving that it had not been collected, and could not be. Yet the master and the court below refused to charge him with a large amount which was wholly unaccounted for, and charged him only with what he admitted to have been collected. This was palpably illegal and unjust.

3. The court below also refused to charge the defendant with interest, even on the rents admitted to have been collected, and retained for years and years without being paid over. Trustees and others acting in a fiduciary character, are chargeable with interest on moneys collected and not paid over in a reasonable time. Interest should have been allowed in this case.—6 Har. & J. 529; 10 Gill & J. 175; 2 Call 249; 3 ib. 538; 1 Johns. Ch. R. 82; 4 Dess. Eq. R. 110; 1 Ashmead 105; 3 Grattan 518, cited in 7 U. S. Digest 315 § 23; 4 Grattan 57.

4. As to the motion to dismiss the appeal because defendant has voluntarily paid, and the plaintiff received, what was confessedly due at all events :  It cannot be maintained on any principle of law or justice, nor on any authority.  Even the cases of Hall v. Hrabrouski, 9 Ala. 278, and Bradford v. Bush, 10 ib. 276, do not go this length : they allowed the plaintiff the privilege of refunding, and gave him time to elect.  But these cases have been held by this court not to apply to chancery cases.—McCreoliss' Disributees v. Hinkle, adm'r, 17 Ala. 459; Knox v. Steele, 18 ib. 815.  There is a good reason for the distinction between a common law judgment and a decree in chancery.  The judgment is an entire thing; the decree consists of parts, and may be partly right and partly wrong.

CAMPBELL & CHANDLER, *contra :*

The appellees move to dismiss the appeal, because the decree has been executed so far as the appellant is concerned, and he has acknowledged satisfaction upon its face.  An appeal is a civil law remedy; the effect of it is, to transfer the case from one court to another, in the same condition in which it was in the inferior court.—5 Cranch 281; 7 ib. 110; 2 Kelly's R. 338; 1 Bouv. Law Dic. 113.  Under the civil law, an appeal could not be taken from an executed judgment, when it was done by the voluntary act of the party.—6 Martin 723; 4 Rob. 85; ib. 163; 6 ib. 136.  The same principle has been adopted in the Ecclesiastical Courts of England.—3 Haggard's Ec. R.

451. The Supreme Court of this State has decided, that, where money has been coerced by execution, it must be restored before a writ of error is allowed.—Hall v. Hrabrouski, 9 Ala. 278 ; Bradford v. Bush, 10 Ala. 276. The plaintiff here has received the money decreed to him, and the deed to one half of the land, making no reservation or protest. He has received the benefit and fruits of the decree, and the court will not now revise it at his instance.

As to the plea of the statute of limitations : The queston is not whether the suit is at law or in equity, nor whether the title is legal or equitable, to sustain a plea of the statute. Where the title is legal, and the court acts concurrently with the courts of law, the statutes of limitation are obligatory on the Court of Chancery, and that court acts " in obedience to the statute." 2 Story's Eq. 735 § 1520. Where the title is equitable, and the complainant is bound to come into chancery, that court adopts the rule of the statute " in analogy to the rule of law." The case of the relation of trustee and *cestui que trust*, where the statute is applicable, has its analogy in cases at law. The statute does not run between bailor and bailee, until there is a disavowal of the bailment. The doctrine laid down in Benje v. Creagh, 21 Ala. 151, is the principle that applies to the case of trustee and *cestui que trust*. The trustee may plead the statute, after he has disclaimed the relation, just as the bailee or the tenant might.—6 Peters 61 ; 10 *ib.* 223 ; 7 Johns. Ch. R. 90. Before this time, the trustee is supposed to hold only for the purposes of the trust ; his position is harmonious with that of the *cestui que trust.*—7 Johns. C. 122. He will not be allowed to take advantage of the confidence which his fidiciary relation created.

Let us apply these principles to the present case. The conveyance to Goldthwaite was for a single object. For some reasons not now known, and on some considerations which are lost by his death, he takes a conveyance of property held by him as tenant in common with Tarleton, for the *sole* purpose of giving it as a security in mortgage. Here his power terminated under the agreement ; he did not undertake to collect and pay over rents under the agreement, nor did he take possession of them by it. The mortgage was made in 1837. It does not appear that he was to receive the rents, nor that it was desirable or nec-

essary: on the contrary, it plainly was not. He could have conveyed to Tarleton the day after the execution of the mortgage, without prejudice or objection from the mortgagee.— Tarleton does not pretend that Goldthwaite collected the rents under this title, nor that he was not authorized to collect them himself ; nor is there any proof, or admission, that, for years after the mortgage was made, Tarleton was in receipt of rents. He charges that he allowed Goldthwaite to collect them, under some notion of indemnity upon distinct, independent and *ex post facto* considerations, moving his own mind, but never, so far as he avers or proves, communicated to Goldthwaite. What, then, is the express trust, that subsisted all this time? Tarleton might have filed a bill for an account, at any time. The right to an account arose when the money was received, as in other cases of tenancy in common. The fact that the legal title was in the one or the other, does not militate against the plea. The money was received for Tarleton's use at the very moment Goldthwaite obtained it, so far as the agreement is concerned.— 8 Porter 213 ; Bald. R. 261 ; 7 Johns. Ch. R. 116 ; 10 Vesey 483. The rents, then, not being received under the agreement, the duty to account arose on the receipt of the money ; and the case bears a direct analogy to the action of account at law. It is not the case of a technical trust, having its existence only in chancery, and of which chancery is the author, but a jurisdiction growing out of the accidental state of the titles, where the rules applied in equity follow those prevailing at law.—20 Johns. 576 ; 4 Ired. Eq. R. 1 ; 4 Mason 152 ; 2 Atk. 610 ; 9 Pick. 244.

The following cases have been decided upon the points involved in this case. The account in behalf of one tenant in common against his co-tenant, for perception of profits, is within the statute of limitations.—Coleman v. Hutchinson, 3 Bibb 210. In cases of implied trusts in relation to personal property, or to rents and profits of real estate, when persons in their own right are turned into trustees by implication, the right of action in equity will be considered as barred in six years.—4 Cowen 718, 742 ; 20 Johns. 576. If one joint tenant or tenant in common receive the rents and profits of the estate, claiming them as his own, the statute of limitations in equity will bar his cotenant.—4 Yerger 104 ; 7 *ib.* 222.

There was an attempt made in the court below to charge Goldthwaite with rents which he did not collect. The bill only claimed one half of the *actual receipts*. There is no charge of any mismanagement, fraud or neglect. The prayer of the bill is for one half. A mortgagee in possession is only liable for gross neglect; *prima facie*, the mortgagor can only claim the actual receipts.—4 Kent's Com. 173 ; 5 Pick. 260 ; 2 J. J. Marsh. 465 ; 2 Call 362 ; 3 N. H. 9 ; 4 Iredell's Eq. 1.

On the subject of interest, see 5 Mason 332 ; 11 Gill & J. 185 ; 4 Ired. Eq. 1.

GIBBONS, J.—A motion is made in the present case to dismiss the appeal, on the ground that the decree of the chancellor has been executed by the defendants, and acquiesced in on the part of the complainant. This motion is predicated on the cases of Hall v. Hrabrouski, 9 Ala. 278, and Bradford v. Bush, 10 Ala. 274. These were cases at law, where writs of error had been sued out and prosecuted in this court, and pending the litigation the plaintiff below had collected his judgment by execution. On the judgment being reversed by this court, a motion, founded upon the fact that the judgment below had been coerced by due process of law, was made in this court to dismiss the writ of error, or stay the certificate of reversal until the plaintiff should restore to the defendant what he had thus coerced from him on a judgment then reversed and held for nought at his own instance. The court entertained the motion in both the cases, and denied the party the right to prosecute his judgment, by enforcing its collection, at the same time that he is seeking a reversal of it; and the court intimate, in the latter case, that, if a motion had been made to dismiss the writ of error before the case was tried in the Supreme Court, on the facts disclosed on the motion then on trial, such motion would have prevailed.

The same principle was afterwards invoked in the cases of McCreeliss' Distributees v. Hinkle, adm'r, 17 Ala. 459, and in Knox v. Steele, 18 Ala. 815. These were cases originating in the Orphans' Court ; and this court, while it recognizes the correctness of the rule as laid down in the cases in 9 Ala. R. and 10 Ala. R., above referred to, distinguish between those cases and the case presented in 17 Ala. The principle is said to be pe-

culiarly applicable to judgments at law, but is not necessarily applicable to cases arising in the Orphans' or Chancery Courts. The reason of this distinction we apprehend to be, that if a judgment at law is reversed, it abrogates the whole judgment. It cannot be reversed in part, and affirmed in part; whereas, in cases from the probate court, and in chancery cases, the judgments or decrees may be reversed in part, and affirmed in part. On the reversal of a judgment at law, therefore, the theory of the law is that the parties are placed in *statu quo*, and are to be considered as if the judgment had never been rendered. In the case of McCreeliss' Distributees v. Hinkle, adm'r, it is said: "The power thus exercised by the appellate court, to compel the plaintiff to refund the money or dismiss the writ of error, seems to me to be a discretionary one, and may be well exercised when the conduct of a party is vexatious or oppressive, and may ultimately result to the injury of the other; but, when the defendant can in no aspect of the case be injured by the plaintiff's receiving the money, and this is paid without compulsion, I see no good reason why we should make an order on the plaintiff to refund the money, or to submit to a dismissal of his writ." We consider this reasoning applicable to the case before us, and it is, in our opinion, decisive of the question. The defendant's motion to dismiss the appeal, therefore, cannot prevail.

The next question, in the order in which we propose to examine the present record, is, whether in the bill, answers, exhibits and proofs, the complainant is entitled to a decree for any thing whatever for rents collected by the intestate in his life time and unaccounted for. It is insisted that, as the complainant's bill, charging indebtedness and demanding the account, calls upon the defendant Campbell to exhibit the documents, memoranda, papers and written evidences tending to establish the state of the accounts between the complainant and the said intestate, in the hand-writing of the said intestate; and inasmuch as the answers deny such indebtedness, and any liability to account, and these documents produced in response to the call of the complainant become evidence in the cause, and show no liability on the part of the intestate to the complainant, so far as the question of rents is concerned—therefore, the complainant is not entitled to an account. It is undoubtedly true,

that memoranda from books, and written documents, when produced in response to a call from the complainant by way of discovery, become evidence in the cause; but, like most other evidence offered upon the trial of causes, it is only evidence tending to prove a conclusion, but is not necessarily conclusive to establish the result which it tends to prove. Taking all the evidence upon the question of the liability of the administrator to account, the case stands thus: In favor of the complainant is the charge in the bill of the liability, with the allegation that the intestate accounted for the rents up to the 1st of November, 1838; and proof that the intestate rented the premises in his own name, and received the rents therefor, all the while recognizing the right of complainant to one half of the land. On the other hand, against the indebtedness, is, first, the answer of the defendant denying the debt, not from personal knowledge, but from belief merely, founded upon the character of the parties and of their situations during the space of time over which the account claims to run; secondly, the fact that there appears upon the books of the intestate the evidence of accounting for the rents up to the 1st of November, 1838, and no evidence afterwards of any accounting, or liability to account, for said rents, on the books or among the papers of said intestate; thirdly, the mutual receipts of the parties, prepared as if in anticipation of a final settlement, or after a settlement had taken place, but not signed by the parties, and the document relative to the rents of the said premises after the 1st of November, A. D. 1847.

In thus stating the evidence, the complainant, in our opinion, has the advantage, and the proof tending to show a liability on the part of the administrator to account, greatly preponderates over that tending to show a contrary conclusion. The complainant does not call upon the defendant to disclose the evidence of a liability to account. This he charges distinctly in his bill, and proposes to prove; but he charges that the defendant, the administrator, has in his possession the specific data by which that account shall be made up, and calls upon him to produce such evidence to the court. The defendant complies, produces the evidence, and when inspected, so far from giving the information which the complainant sought, it tends rather to show no indebtedness at all. But we do not consider this evidence suf-

ficiently weighty to overbalance the proof of the complainant, tending to show a liability to account for rents in the hands of the intestate, and we must decide according to the weight of evidence.

The first error assigned upon the record is, that the court below sustained the plea of the statute of limitations of six years, and limited the complainant's demands to six years next preceding the filing of the bill. The question raised by this assignment is, whether the statute of limitations applies to a trust of the nature and character of the one in question. It is contended on the part of the complainant, that this is an express trust, created by the act of the parties, and to such a trust the statute of limitations can never be pleaded. This principle is well sustained by authority.—Hill on Trustees 263, 264; Lewin on Trustees 611. But while this is true, it is equally true that a trust created by implication is subject to the statute of limitations. Says Mr. Lewin, in the work above cited, " It is a well known rule, that, as between *cestui que trust* and trustee, in the case of a direct trust, no length of time is a bar; for, from the privity existing between them, the possession of the one is the possession of the other, and there is no adverse title. It has hence been argued that, as the person into whose hands the estate is followed, is also, by construction of law, a trustee, the *cestui que trust* is entitled to the benefit of the rule, and is not precluded by mere lapse of time from establishing his claim; but the authorities to the contrary are clear and express, and cannot leave a doubt."

" It is certainly true," said Sir William Grant, " that no time bars a direct trust; but, if it is meant to be asserted that a court of equity allows a man to make out a case of constructive trust at any distance of time after the facts and circumstances happened out of which it arises, I am not aware that there is any ground for a doctrine so fatal to the security of property as that would be; so far from it, that not only circumstances where the length of time would render it extremely difficult to ascertain the true state of fact, but where the true state of the fact is easily ascertained, and where it is perfectly clear that relief would originally have been given upon the ground of constructive trust, it is refused to the party who after long acquiescence comes into a court of equity to seek that relief."—

Beckford v. Wade, 17 Vesey 97. To the same effect is the language of Lord Redesdale, in the case of Hovenden v. Lord Annesley, 2 Sch. & Lef. 633.

The question, then, arises, whether the claim set up by the complainant for the rents is founded upon an express or an implied trust. As to the land itself, the trust is undoubtedly direct, and was created by the act of the parties; but as to the rents and profits of the land, there is nothing whatever said in the paper which was given by Goldthwaite to the complainant, on receiving from him a deed for the one half of the premises. As to these rents, the intestate acquired the character of trustee purely by implication, and as an incident to the express and direct trust created by the parties. Our conclusion, then, is, that the claim set up for rent by the complainant, under the circumstances, is one to which the statute of limitations does apply.— On this subject Mr. Lewin remarks : " Wherever there is a statutable bar at law, the same period is by analogy, or rather in obedience to the statute, adopted as a bar in equity."—Lewin on Trustees 613. There was, therefore, no error in the decree of the Chancellor, in limiting the demand of the complainant to six years prior to the filing of the bill, deducting the time elapsing between the death of the intestate and the six months after the grant of letters of administration to the defendant on the estate of the intestate.

The next assignment of error is, that the court refused to charge the defendant with the amount of rents not accounted for. The proof on this subject before the master was, that the contracts for rent during the period inquired of produced $4950. Of this sum, the defendant acknowledged to have received the sum of $2248. The defendant showed the further sum of $1200 in his hands, in the shape of notes arising from the rent of the said premises. But there yet remained the sum of $1351 22, entirely unaccounted for. We apprehend it would not do to say that this portion of the rent contracts was not received by the intestate, because no evidence of it appears upon his books. After the rent contracts are proved, fixing the amount at which the property was rented from year to year, we apprehend the burden of proof is then changed to the defendant to show what was or was not received, if he would avoid a liability to account according to the contracts. In refusing to

Tarleton v. Goldthwaite's Heirs and Adm'r.

charge the defendant with the half of this amount of rent entirely unaacounted for, the court below, in our opinion, erred.— It is insisted that, as the bill only calls for an account of what rents were received, this item does not fall within the purview of the bill, until the proof shows they were in fact received.— In our view, the proof does show, *prima facie*, that the portion of the rents represented by this item was received, and that proof consists in showing the contracts for renting as above set forth. That proof is sufficient, *prima facie*, to charge the defendant with the amount, and it rests with him, after it is made, to show that it was not received, or what part, and for what reason it was not received.

The court, in our opinion, also erred in not charging the defendant in the account with interest on the money actually received by the intestate from the date of such receipt. In the case of Whitworth and Wife v. Hart *et al.*, 22 Ala. 343, at the last term of this court, we decided that "interest was but a just compensation for the withholding of the principal, and when the principal is ascertained to be due at a particular period, and remains unpaid without a sufficient excuse, interest follows as an incident." The defendant should, therefore, have been charged with interest on such amount as was found in his hands, belonging to the complainant, from the date of the receipt of the several items making the aggregate so found.

For the error above noted, the decree of the Chancellor, so far as it militates against the views above expressed, is reversed, and the cause remanded; and so far as the decision of the court below is in accordance with the views above expressed, the decree is affirmed. It is further ordered that the defendants in error pay the costs of this court.

GOLDTHWAITE, J., not sitting.