Kempe et ux. v. Pintard.

---

## THOMAS B. KEMPE and WIFE v. JOHN M. PINTARD.

1. EXECUTOR AND ADMINISTRATOR : SALE OF LAND BY : RECORD MUST SHOW NOTICE.—It is essential to the validity of a sale of real estate, made by an administrator under a decree of the Probate Court, that the record show, not only that legal citations were regularly issued, but that they were served in the mode prescribed by law. See 7 S. & M. 444; 27 Miss. R. 52.

2. SAME : VOID SALE AFFIRMED BY RECEPTION OF THE PURCHASE-MONEY BY THE HEIR. —If the heir, though a *feme covert*, receive from the administrator the proceeds of a void sale of her land, it will be an affirmance of the sale, and she will be estopped from denying its validity. See *Lee* v. *Gardner*, 26 Miss. R. 548.

3. HUSBAND AND WIFE: POWER OF HUSBAND TO RATIFY AN ILLEGAL SALE OF WIFE'S REALTY.—The husband has no power to ratify, without the consent of the wife, a void sale of her land, made under a decree of the Probate Court; and hence, a reception of the purchase-money by him on her behalf, but without her consent, will not preclude her from insisting on the invalidity of the sale; but if the rule were otherwise, it is clear that if he were the purchaser, a receipt given by him to the administrator for the proceeds, in satisfaction of his indebtedness for the purchase-money, would not bind her.

4. HUSBAND AND WIFE : RIGHT OF HUSBAND TO RECEIVE PROCEEDS OF SALE OF WIFE'S REALTY.—Whether the husband, without the consent · of the wife, can receive

Kempe et ux. *v.* Pintard.

from the administrator the proceeds of a valid sale, made by him, of her real estate, so as to discharge the administrator from all liability to the wife? *Quære.*
5. CASE CITED.—The case of *Lee* v. *Gardner*, 26 Miss. R. 548, cited and explained.

IN error from the District Chancery Court at Natchez. Hon. B. C. Buckley, vice-chancellor.

A full statement of the case will be found in the opinion of the court.

*H. T. Ellett* and *W. S. Wilson*, for plaintiffs in error, made the following points, and cited the following authorities:—

1. Bowen's interest in his wife's estate ceased upon the granting of the divorce *a vinculo.* Bishop on Marriage and Divorce, §§ 660, 666, 667; 2 Black. Com. 433; 10 Paige, 420; 5 Dana, 254; 10 Mass. R. 262-264; 3 Co. Litt. 351, a.; 1 Hillyard, Real Prop. 119; 10 Cow. 225; 5 Blackf. R. 309; 9 Vermont, 292; 3 Barb. Ch. R. 204; 4 Harrington, 440.

2. The sale of the land by the administrator of Charles S. Lee, was void, the citations not having been posted in three public places in the county. *Planters' Bank* v. *Johnson*, 7 S. & M. 449; *Groiner* v. *M'Carroll*, 1 Ib. 351; 6 Ib. 259; 9 Ib. 613; 27 Miss. R. 52.

*J. Winchester*, for defendant in error.

1. The recitals in the decree are at least *prima facie* evidence that the sale was legal, and there is no proof to contradict them. See *Gelstrop* v. *Moore*, 26 Miss. R. 209; *Stevenson's Heirs* v. *M'Reany*, 12 S. & M. 9.

2. Mrs. Kempe, through her husband, received from the administratrix the purchase-money of the land, and she is thereby estopped from denying the validity of the sale, as was expressly decided by this court in relation to this same title, in *Lee* v. *Gardner*, 26 Miss. R. 548.

HANDY, J., delivered the opinion of the court.

This was a bill filed by Pintard, in the District Chancery Court at Natchez, against Allen G. Bowen, his wife and others, for the purpose of subjecting to the payment of a debt, due by Bowen to

Pintard, a tract of land to which Bowen claimed title, and which, by written agreement between Pintard and Bowen, was to be charged with the payment of the debt. The bill states that the title of Bowen to the land is derived from his purchase of it at a sale made by Ann Lee, as administratrix of Charles S. Lee, under a decree of the proper Probate Court, and a deed executed by the administratrix, which is exhibited; but that Margaret Bowen, who was the wife of Allen G. Bowen, when the bill was filed, but who has since intermarried with Thomas B. Kempe, claims title to the land as the sole heir-at-law of Charles S. Lee, upon the ground that the sale made by the administratrix was irregular and passed no title. The bill further avers that Bowen fully paid the purchase-money to the estate, amounting to upwards of twenty thousand dollars, seeks a confirmation of the title of Bowen, and prays the extinguishment of certain incumbrances upon the land held by other parties who are made defendants, and the satisfaction of the complainants' debt by a sale of the land.

The bill was taken *pro confesso*, against Bowen and wife, and Ann Lee, and upon the hearing, a final decree was made as prayed.

Afterwards, and within five years from the date of this decree, Thomas B. Kempe and Margaret his wife, filed their petition praying to be admitted to contest the bill, showing that Margaret Kempe was formerly the wife of Bowen, but before the date of the decree, that they had been divorced *a vinculo matrimonii*, and that she had intermarried with Kempe, and praying to be admitted to answer the bill as non-residents. This petition was granted, and Kempe and his wife answered denying that Bowen had any title to the land except what he acquired by his marriage with his wife, now Margaret Kempe, who is the sole heir of Charles S. Lee; that Bowen and his wife had no issue, and were divorced in December, 1848, prior to the decree in this case, and that Bowen died in the year 1853. The answer further states that the decree of the Probate Court for the sale of the land, and under which Bowen's title was acquired, was void, because the record does not show that the citations required by law to be put up at three public places in the county were posted, nor were they in fact posted; that the land was bid off at the sale, by Bowen, for a mere nominal

sum, but that he never paid the purchase-money or any part of it, nor accounted for it to any one.

It appears by a transcript of the record of the proceedings in the Probate Court, that the land was prayed to be sold for the payment of debts, the personalty being insufficient for that purpose; and the decree for the sale contains the following recital:— "It appearing to the satisfaction of the court, that publication has been made, and citation issued according to law to all persons interested in the lands, tenements and hereditaments of Charles S. Lee, deceased, as a notice that application would be made at this term for an order to sell certain real estate," &c. The transcript contains proof that publication was made, but does not show that citations were posted up as required by law.

The complainant offered as proof the final account of Ann Lee, administratrix, with the Probate Court, in which she is charged with $13,395, as "heir's portion of real estate," and claims credit for the same amount, "paid to Allen G. Bowen for heirs;" also a receipt executed by A. G. Bowen to Ann Lee, administratrix, and filed as a voucher with her account, for the same sum of money, which is therein stated to be in full of all claims of himself and his wife for the proceeds of the sale of the land sold by her.

On the final hearing, the court decreed that the previous decree be set aside as to Mrs. Kempe, and that the bill be dismissed as to her and her husband, but that it be confirmed in all other respects, and that the complainant have execution of it. To this decree, Kempe and wife have brought this writ of error.

It is clear that by the dissolution of the marriage between Bowen and his wife, and especially by his death, all interest which he had in the land in controversy in right of his wife, as the heir-at-law of Charles S. Lee, ceased; and if he had any interest in the land which could have been subjected to the claim of the complainant, it must have been in virtue of his purchase at the sale made by the administratrix.

The first question then is, whether the decree for the sale was valid, with respect to the notice under which it was made.

It appears by the record of the Probate Court that, on the petition of the administratrix, at June term, 1838, it was ordered that

publication be made and citation issued to all persons interested, to show cause why the land should not be ordered to be sold; and at the September term, 1838, the decree of sale was made. There was proof that the publication was made, but it neither appears by proof nor is it stated in the decree, that the citations, as required by law, were *set up* in three of the most public places in the county. The only thing that appears by the record to have been done with respect to the citations is, that they were ordered to be issued, and *were issued,* according to law. But it no where appears that they were set up. This is essential and indispensable to the validity of the decree, under the repeated decisions of this court. *Planters' Bank* v. *Johnson,* 7 S. & M. 449; *Currie* v. *Stewart,* 27 Miss. 52. The decree and the sale under it were, therefore, ineffectual of themselves to pass title to the purchaser, and the land remained the property of the heir-at-law of Charles S. Lee, as if the sale had never been made.

The next question is, whether the acts of Bowen, with regard to the purchase-money, amount to an affirmance of the sale by his wife, and are sufficient now to estop her from denying the validity of the title acquired by him under the sale.

The bill alleges that Bowen paid the purchase-money in full to the administratrix. This is explicitly denied by the answer; and the proof is, that on the day after the sale, Bowen executed to the administratrix a receipt in full for all claims of himself and of his wife, as well as of her deceased sister, of whom he was guardian, upon the proceeds of the sale of the land. In the final account of the administratrix she is credited by the same amount of money paid to Bowen for the heirs; and in the deed executed to him for the land by the administratrix, and bearing the same date as the sale, it is recited that he had secured the payment of the purchase-money to her satisfaction. It further appears that the decree directed the land to be sold on a credit of one, two, and three years.

Under these circumstances, it is plain that Bowen did not actually pay the purchase-money to the administratrix, and that the matter was settled by private arrangement between them, without the payment of any money.

It is true, that if she had received the purchase-money, or had consented that her husband should make the arrangement which he did, that would have been an affirmance of the sale, and in equity she would have been precluded from denying its validity. But there is no proof of any thing done by her that could have such an effect, and the arrangement must be considered as having been made without her knowledge and consent.

The *sale* of the land being void, her title remained as if it had never been made.  It was necessary that *she* should do some positive act that would conclude her from objecting to the sale, because it was *her* title that was to be affected by the act, and that title was wholly independent of her husband.  Suppose it appeared that the money was actually paid, and upon application that she refused to accept it, and that her husband afterwards, without her consent, received it; or suppose that she was applied to for her consent to the arrangement made between her husband and the administratrix, and she refused, and notwithstanding this, that the arrangement was made, would she be bound by such act of her husband? Clearly she would not; because her separate interest being unaffected by the sale, it would require some act on her part, amounting to a consent that the sale should stand, before her right would be lost.  Until such an act be shown, her rights remain wholly unaffected by the acts of her husband.

If the sale had been regularly and lawfully made, and the land purchased by a stranger, who paid the purchase-money, and Bowen had received it on account of his wife, it might then have become a question between Mrs. Kempe and the administratrix, whether the husband was entitled to receive the money, and to bind her by his receipt.  Then the question would have been, whether the husband was entitled to give an acquittance for money due by the regular sale of the wife's lands, which was to be regarded as her separate property.  But a different question is manifestly presented in this case; it is, whether the husband can bind his wife, without her consent, to an unauthorized sale of her real estate.  And upon that question there can be no doubt.  He could not bind her by any positive act of his, even his deed, much less could he bind her by a mere recognition of the sale, or by any collateral act that

would have had that effect if done by her. From the nature of the case something more was involved than the mere authority to receive the purchase-money due in right of the wife. Her title to the land remained unaffected by the sale, and nothing short of an act of positive and clear acquiescence on her part would conclude her rights. The effect of the receipt of the money would be virtually a conveyance of her title by estoppel, and it would be absurd to say that the husband could produce such a result by his receipt of the money without her consent, when he could not convey her title by solemn deed. It is clear, therefore, that the acts of Bowen did not conclude the rights of his wife.

But the arrangement in the settlement of the purchase-money was irregular in another respect, and must be regarded as a fraud upon the rights of Mrs. Bowen. The decree directed that the land should be sold upon a credit of one, two, and three years. If that had been complied with, she might have had the benefit of the purchase-money, which was payable on time, if she survived her husband. But contrary to the decree, the money was settled immediately between the purchaser and the administratrix, by the application of the proceeds of the sale of the separate property of his wife to the payment of his indebtedness for the purchase-money, without her knowledge or consent; and if his receipt for the purchase-money due her was binding, she would lose all claim except a mere personal demand against his estate for the money. If such a proceeding could be sanctioned, it would be in effect to allow a husband, contrary to the authority under which the sale was made, to procure a conveyance of his wife's separate estate to himself without consideration, and without her knowledge or consent, and to dispose of it at pleasure, leaving her without adequate remedy for the wrong. Moreover, the complainant shows only an equitable title. In any just view that can be taken of the case, it is manifest that the equity of the plaintiffs in error is entitled to the more favorable consideration, and it is prior in point of time. Upon that ground it is entitled to prevail.

The case of *Lee* v. *Gardner*, 26 Miss. 548, is cited by the counsel for the defendant in error, as holding that the plaintiffs in error are estopped by having received the purchase-money, from denying

the validity of the sale. But the questions presented here are under very different circumstances from that case. There no question was made as to the actual payment of the money, or of the authority of the husband to receive it, or of the acquiescence of the wife. There was nothing to show that these facts did not exist, and they were therefore taken as conceded, and held to be an acquiescence in the sale. Here they are the very subject of controversy, and are denied and disproved.

It follows from the views above stated that the original decree, directing a sale of the land for the payment of the complainants' debt, should have been set aside in the final decree. A decree is ordered accordingly, and dismissing the bill as to the plaintiffs in error.