## HOARD *vs.* HOARD'S ADM'R.

[SALE OF DECEDENT'S LANDS, BY PROBATE COURT, FOR DIVISION.]

1. *Parties to appeal.*—The purchaser of lands, sold under an order of the probate court, for the purpose of making an equitable division among the heirs, is not a necessary party to an appeal sued out by the heirs, to reverse the order of sale and the subsequent order confirming the sale.

2. *Receiving satisfaction of order or decree appealed from.*—An appeal from an order of the probate court for the sale of a decedent's lands for division, and from a subsequent order confirming the sale, will not be dismissed, at the instance of the administrator, because the infant heirs, who are the appellants, have received the proceeds of sale on final distribution of the decedent's estate, and have not offered to make restitution; it being shown that the money was voluntarily paid by the purchaser, and received by the administrator, more than twelve months before it became due by the terms of sale, and that the payment was thus made, in 1863, in Confederate States treasury-notes.

3. *Sufficiency of petition for order of sale, in averring names and ages of infant heirs.*—A petition for the sale of a decedent's lands for the pur-

pose of making an equitable division among the heirs, which does not state the ages and christian names of the heirs, although it shows that they are infants, and states the name of their guardian, is fatally defective, (Code, § 1868,) and will not support an order of sale; and if these omissions or defects in the petition can be cured, in any case, by the recitals contained in the order of sale, they are not cured by a recital, as in this case, that the names of the infants were *Angeline* and *Mary*, while the depositions on file simply describe them as *Angie* and *Mollie*.

APPEAL from the Probate Court of Sumter.

IN the matter of the estate of Addison Hoard, deceased. The record shows, that letters of administration on the estate of said decedent were granted by said probate court, on the 19th April, 1859, to Preston G. Nash, who gave bond, and entered immediately on the discharge of the duties of the trust; and that on the 9th September, 1862, the said administrator filed a petition in said probate court, asking an order to sell the decedent's lands for the purpose of making an equitable division among the heirs. The petition described the lands, of which the decedent was alleged to have been seized and possessed at the time of his death, and then contained the following averments: "Petitioner further alleges, that the following named persons are the only heirs and distributees of said deceased—to-wit: William Hoard, about fourteen years of age, of whom Dr. Knott, of Greene county, Alabama, is legal guardian; also, —— Hoard, about —— years of age, and —— Hoard, about —— years of age, of whom C. S. McConnico, of the county of Sumter, State of Alabama, is legal guardian. He further alleges, that a fair, lawful, and equitable division of said lands, among said heirs and distributees, can not be made without a sale of the same." On the day the petition was filed, the court made an order, setting the 22d October for the hearing of the application, and appointing C. S. McConnico as the guardian *ad litem* "of all said minors;" which order recites, that "it appears to the court, from an inspection of said petition, that the only heirs of said deceased are his three children—William Hoard, who is about the age of fourteen years, and resides with his guardian, Dr. Knott, in Greene county, Alabama; and Angeline Hoard and Mary Hoard, who are under the age of

fourteen years, and reside in Sumter county." McConnico, as guardian *ad litem*, endorsed on the petition a denial of its allegations, and required proof thereof. The depositions of two witnesses were taken on interrogatories, to prove the averments of the petition; each of whom testified, that the said lands could not "be fairly, beneficially, or equitably divided among the heirs, without a sale;" and that the names of the heirs were, "William, Angie, and Mollie." On the 27th October, 1862, the court granted an order of sale; the order reciting the appearance of the guardian *ad litem* for the infant heirs, (whose names were stated as in the former order,) his denial of the averments of the petition, the proof taken by depositions, &c.; and directed the sale to be made, after due notice by advertisement, &c., "on a credit of one and two years, with interest from the day of sale, and to be secured by notes, with at least two good and sufficient sureties." The sale was made by the administrator, under this order, on the 17th November, 1862, and reported by him to the court on the 26th November; and the court thereupon made an order, on said last named day, confirming the sale. The report of the sale, and the order confirming it, state that Socrates Parker became the purchaser of the lands, at the aggregate price of $4,000 36, and executed his notes, with two sureties, for the amount of the purchase-money.

The record shows, also, that, on the 16th of August, 1863, the administrator filed his accounts and vouchers for a final settlement, charging himself therein, as of the 19th August, with the sum of $4,675 06, " proceeds of sale of land, with interest;" and that the court rendered a decree on final settlement, on the 16th September, 1863, allowing his accounts as stated, and awarding to each of the heirs and distributees their respective portion of the assets in his hands, including the proceeds of the sale of the lands.

On the 13th August, 1866, an appeal was sued out by the three infant heirs, " from each and every order, decree, and judgment of said probate court, in relation to the petition filed by P. G. Nash, as administrator of Addison Hoard, deceased, for the sale of the decedent's lands." The errors assigned by them were—1st, " the final decree

of the probate court;" 2d, "the order authorizing the administrator to sell the lands;" 3d, "the order confirming the administrator's report of the sale;" and, 4th, "each order and decree in favor of the appellee." The appellee moved to dismiss the appeal, on the grounds stated in the brief of his counsel; and submitted, with his motion, the affidavits of the probate judge and C. S. McConnico; the former of whom stated, that the purchase-money for the land "was collected from Socrates Parker, the purchaser at the sale, and accounted for on final settlement of said estate, and that the heirs, by William Knott and C. S. McConnico, their general guardians, have received the purchase-money, and have never returned, or offered to return it;" while McConnico stated, in his affidavit, that he acted as guardian for two of the minor heirs, and, as such guardian, received from the admfnistrator their respective distributive shares of the estate, in Confederate States treasury-notes, ("the same being part of the purchase-money of said lands,") and that he had never returned, or offered to return the said treasury-notes, either to the administrator or to Parker.

RICE, SEMPLE & GOLDTHWAITE, with whom were COLEMAN & COCKRELL, for the appellants.—1. The petition for the sale of the lands was fatally defective, in not stating the names and ages of the infant heirs.—Code, § 1868; Session Acts, 1853-4, pp. 55-6. This would have been a fatal defect on error or appeal, even under the former statutes; and other substantial errors and irregularities are shown by the record, which are sufficient to set aside and annul the order of sale.—*Cloud v. Barton,* 14 Ala. 346. The proceedings connected with the sale are founded on statutory authority, and the courts have no power to dispense with any of the statutory requisitions.—*Jackson v. Wiseburn,* 5 Wendell, 136; *Caldwell v. Mayor,* 9 Paige, 572; *Boykin v. Rains,* 28 Ala. 340; *Bright v. Boyd,* 1 Story, 486. If any doubt could be entertained, under the decisions of this court construing the former statutes, it must be removed by the peculiar phraseology of the act of 1854, (above cited,) which expressly declares, that "any order of sale, and sale, made

without a compliance with the requisitions of this act, *shall be wholly void ;"* and which was manifestly intended to afford greater protection to the rights of helpless infants than former statutes, as judicially construed, extended to them. Plainer language to effectuate that intention cannot well be conceived.

2. The purchaser of the lands, at the sale made by the administrator, is not a necessry party to the appeal. The doctrine of *caveat emptor* applies to such sales, and there is no implied warranty. An express warranty by the administrator might bind him personally, but could not affect the interests of the estate, or of the infant heirs.

3. The right of the infants to prosecute this appeal cannot be taken away, or affected in any manner, by the voluntary payment of the purchase-money long before it became due ; nor by the voluntary receipt of that money by the administrator; nor by the voluntary settlement made by the administrator ; nor by the receipt of the Confederate treasury-notes by their general guardian. The voluntary payment of a judgment, or the voluntary execution of a decree for money, by the defendant therein, cannot, in any case, deprive the adverse party of the right of appeal. Restitution, or a tender, of a thing which is worthless, is never necessary ; and in this case, it must be observed, restitution is not asked. The motion to dismiss the appeal seeks to make the voluntary payment of the purchase-money, and its voluntary receipt by the administrator and guardian, operate an estoppel on the infant heirs, and as a ratification of the unauthorized sale. The rights of infants cannot be thus taken away, or prejudiced. It is the duty of the court, in every case, where the rights of infants are concerned, to exercise its protective jurisdiction in their behalf.—*Clark v. Gilmer*, 28 Ala. 265 ; *Sanford v. Granger*, 12 Barbour, 392; *Lefevre v. Laraway*, 22 Barbour, 168. "The distributees' receipt of property, bought with the proceeds of an unauthorized sale by the administrator, cannot operate as a ratification of the sale, unless they were of lawful age when they received it, and knew with what funds it had been bought."—*McArthur v. Carrie's Adm'r*, 32 Ala. 76. At most, the heirs have a right of

election between the land and the money; and a court of equity alone can compel an exercise of that right, or adjudicate on the question of election.— *Gerald v. Bunkley*, 17 Ala. 177; *Oliver v. Piatt*, 3 How. (U. S.) 401.

WM. M. BROOKS, *contra.*—1. The appeal ought to be dismissed, because the purchaser at the sale is not made a party. He is a party in interest, (indeed, the party most interested,) and ought to have an opportunity to assert and defend his rights.

2. The appeal ought to be dismissed, for the further reason, that the purchase-money has been fully paid, fully accounted for by the administrator, and received by the appellants; and the parties cannot now be placed *in statu quo.*—*Hall v. Hrabrowski,* 9 Ala. 278; *Bradford v. Bush,* 10 Ala. 274; *Prewitt v. Garner,* 32 Ala. 13; *McCreliss v. Hinkle,* 17 Ala. 459; *Knox v. Steele,* 18 Ala. 815.

3. If the motion to dismiss the appeal should be overruled, then it is submitted that, in the proceedings connected with the sale of the lands, the record shows a substantial compliance with the requisitions of the statute.—*King v. Kent,* 29 Ala. 542. The act of 1854 is no more stringent or imperative than the former statutes, which have been judicially construed by this court.—*Satcher v. Satcher,* at the last term. If the petition be defective in its description of the heirs, its omissions are supplied by the recitals of the decree, and by the proof.

JUDGE, J.—The motion to dismiss the appeal in this case is predicated upon two grounds: 1st, that the purchaser of the land was not made a party on the appeal; and, 2d, that the amount of the purchase-money, for which the lands were sold, has been received, and is still held by the appellants, and that they are thereby precluded from the prosecution of an appeal from the order of sale.

The first ground is, we think, untenable. The appeal not being alone from the order of confirmation of the sale, the purchaser would be an improper party, he having no legitimate connection with other matters involved in the litigation; and this brings us to the consideration of the second ground.

2. By legislative enactment, based upon a constitutional provision, an appeal lies in all cases like the present, in favor of either party, as "*matter of right.*"—Constitution of Ala., Art. 6, § 2; Rev. Code, § 3485. The appeal in the present case was regularly taken; all the requisites of the law to make it valid, and to secure the exercise of the constitutional jurisdiction of this court in revising the action of the court below, having been complied with. Can this court, in such a case, lay the heavy hand of prohibition upon the appellants, and abridge, or deny to them, their constitutional right to be heard on appeal? That it may, under certain circumstances, has been settled by the action of our predecessors, and is, therefore, not now an open question in this State.—*Hall v. Hrarbowski,* 9 Ala. 248; *Bradford v. Bush,* 10 Ala. 274; *McCreliss v. Hinkle,* 17 Ala. 459; *Knox v. Steele,* 18 Ala. 815; *Tarleton v. Goldthwaite,* 23 Ala. 346; *Riddle v. Hanna,* 25 Ala. 484; *Garner v. Prewitt,* 32 Ala. 13. It is equally well settled, that the power thus to act is *discretionary,* " and rests upon the authority, vested in all courts, to restrain the action of suitors before them, when their acts are *oppressive,* or *vexatious.*" This, in our opinion, is a high power, and should only be exercised in a case clearly authorizing it; and whether it should be exercised, or not, in any case, cannot be determined by any general rule, but must depend upon the particular circumstances of the case, in which its exercise is invoked.

In *Hall v. Hrabrowski,*(the leading case upon the question in this State,) it was held to be both vexatious and oppressive, in the plaintiff below, to prosecute his suit in this court to reverse a judgment, the correctness of which he impliedly affirmed, *by coercing payment from the defendant under it.* And such was the decision in each of the subsequent cases of *Bradford v. Bush,* and *Knox v. Steele,* which involved a similar state of facts.

In the case of *McCreliss v. Hinkle,* the administrator filed his account and vouchers in the orphans' court, for a final settlement. On the day of the settlement, the court ascertained to be in the hands of the administrator, subject to distribution, the sum of thirty-four hundred and eleven

dollars. The administrator then paid to the distributees, respectively, their portions of this sum, and no decree was rendered against him; but he was discharged, and the estate declared to be fully settled. From this decree a writ of error was sued out, and the cause removed into this court. A motion was here made to dismiss the writ, on the ground that the plaintiffs had received payment of the amount ascertained to be due them. DARGAN, C. J., in delivering the opinion of the court, referred to, and fully approved, the decisions in the cases of *Hall v. Hrabrowski*, and *Bradford v. Bush;* and stated that these decisions would not apply to a case in the orphans' or chancery court, " if it plainly appears from the showing or answer of the defendant, that the plaintiff could not recover less than the amount awarded to him by the decree." It must be noted, that there was nothing in the case, beyond what has been stated above, going to show that the plaintiffs could not recover less on another trial than the amount which had been ascertained to be due them on the settlement ; and the decision upon the motion was manifestly predicated upon the fact, *that the payment by the administrator was voluntary ;* for the learned chief-justice, in closing his opinion upon that part of the case under consideration, said : " In this particular case, however, there is no decree in favor of the plaintiffs in error. The decree shows that, on the day of the final settlement, a sum of money was in the hands of the administrator, which he paid over to the plaintiffs ; and the decree was then rendered in his favor, by which he was entirely discharged. This is the same, in effect, as if this amount had been paid to the distributees before the day of final settlement; and then on that day there had been nothing found in his hands due to the plaintiffs. We cannot doubt but that we should hear the errors assigned."

In *Tarleton v. Goldthwaite*, the first head-note expresses correctly the decision of the court upon the question we considering; it is as follows : " In chancery cases, when the decree is voluntarily executed by the parties, and the complainant receives the money decreed to him, he may nevertheless prosecute an appeal." The case of *McCreliss*

*v. Hinkle,* seems to have been the ruling authority upon which the court made this decision.

In *Riddle v. Hanna,* (25 Ala. 484,) which was a chancery cause, the decree had been "enforced, on the petition of all the appellants who were of full age ;" and the power of the court in question was properly exercised, on the authority of previous adjudications applicable to such a state of facts.

*Garner v. Prewitt,* 32 Ala. 13, was peculiar in its facts, as bearing upon the question involved. The bill was filed for the settlement of partnership accounts, and a decree was rendered settling the principles upon which the account between the parties was to be taken, and prescribing the amounts of the great majority of the items on both sides. Upon taking the account, the register found a balance against one of the complainants, of $1,681 50, and against the defendant of $1,718 21. A settlement was then had between the parties, which included a division of the funds and claims in the receiver's hands ; and on the settlement, there were inequalities of a few dollars, which were at once adjusted by payments in cash. The parties subjoined to a statement of the settlement a writing, subscribed by each, acknowledging the receipt from the receiver of the notes whch had been assigned to the parties respectively, on the settlement, and of the amounts of cash which had been allotted to each. The writing further stated, that each of the parties against whom a balance had been found by the register, as above named, had accounted for the same, and that reciprocal discharges therefor were given. It was held by the court, that this settlement, and the consequent agreements, made " a contract, in which the parties reciprocally received and granted benefits, and executed discharges ;" that it was "impossible for the appellant, or the court, to restore the appellees to the same situation in which they stood when they were induced to make the settlement with the appellant, by his treatment of the decree as valid and subsisting ;" and that, inasmuch as the adversaries of appellant could not be placed in *statu quo,* and the court could not perceive that no injury would result to them, it would not permit appellant to allege error in the

decree thus acted on.   Under the peculiar facts of the case, we have no fault to find with the conclusion attained by the court therein.

It will be perceived, that not one among the various adjudications of this court, above cited, recognizes a *voluntary payment*, merely, as sufficient to bar the right of the party retaining the payment, to prosecute an appeal as to any matter out of which the payment grew.

We now proceed to a statement and consideration of the facts involved in the present motion.   The order of sale required, that the lands should be sold on a credit of one and two years, and that the purchase-money should bear interest from the day of sale.   The sale was made on the 17th of November, 1862 ; and consequently, the first installment of the purchase-money became due on the 17th of November, 1863, and the second installment became due on the 17th of November, 1864.   The affidavit of the administrator, submitted with the motion, shows that he received the purchase-money from the purchaser, but does not state when he received it ; and the affidavit of the guardian of appellants shows, that he received the distributive share of each of the appellants, as ascertained on the final settlement of the estate by the administrator, of which the purchase-money of the lands was a part.   The record shows that the final settlement was made on the 16th September, 1863 ; and that the administrator charged himself, on the settlement, with the full amount of the purchase-money, as having been received by him on the 19th of August, 1863.   Thus we ascertain that the purchase-money was paid about three months before the first installment thereof became due, and about fifteen months before the maturity of the second and last installment.   What was the cause of this departure from the usual course, in the payment and receipt of the purchase-money ?   Who, in the contemplation of the parties to the transaction, might be benefitted, and who injured, by thus paying and receiving the whole of the purchase-money, in Confederate States currency, in a lump, so long in advance of its maturity ?   But we need not speculate as to this matter.   The fact exists, that the purchase-money was not only *voluntarily*, but *swiftly* paid.

Under these circumstances, can it be said that these *minor appellants* are guilty of either vexation, or oppression, in the prosecution of their appeal?

It may be contended, that it is unjust to permit the guardian of appellants to hold on to the proceeds of the sale, while appellants are seeking to reverse the order of sale. But, if this be unjust to any of the parties, to the extent of causing them to suffer, who placed them in the position to suffer from the injustice? They were not thus placed by any legal *coercion*, but by their own voluntary acts, which cannot constitute vexation, or oppression, on the part of appellants. In the exercise of a sound discretion, we feel constrained to overrule the motion to dismiss the appeal. The circumstances of the case surely call for the exercise of the discretionary power of the court, in favor of the minor appellants.

3. We next proceed to a consideration of the case on its merits. The statute, under which the application for the order of sale was made, requires that the application should "describe the lands accurately, and give the names of the heirs, or devisees, and their places of residence ;" and that it should " also state, if any, and which of such heirs, or devisees, are under the age of twenty-one years, or married women, or of unsound mind."—Code, § 1868. The statute of 1822 (Clay's Digest, 224, § 16) required, in substance, the same statements to be made in such an application, with the exception that it did not require a disclosure therein, as to which of the heirs or devisees, if any, were of "unsound mind."

In *Griffin's Heirs v. Griffin's Executors*, (3 Ala. 623,) which was an adjudication upon the act of 1822, it was held, that the explicit declarations of the statute, as to what must be stated in the application, were to be regarded as imperative ; that the jurisdiction of the orphans' court, in such a case, being founded upon a statute, it was essential to the regularity of its proceedings, that the requirements of the statute should be adhered to ; and it was therefore held, that a petition which did not state the ages of the several heirs, and whether the females were *femes covert*, was bad *on demurrer*. In the subsequent case of *Cloud and Wife v.*

*Barton*, (14 Ala. 347,) a similar omission in the application was adjudged insufficient, *on error*, to sustain the decree of sale. See, also, *Blann v. Grant*, 6 Ala. 110.

These judicial constructions of the act of 1822 apply with equal force, in the construction of section 1868 of the Code.—See *Tillinghast v. Jones*, January term, 1867.

The application by the administrator, in the present case, as to a description of the heirs and distributees, is as follows : "He further alleges, that the following named persons are the only heirs and distributees of said deceased, to-wit : William Hoard, about fourteen years of age, of whom Dr. Knott, of Greene county, Alabama, is legal guardian ; also,—— Hoard, about —— years of age, and —— Hoard, about —— years of age, of whom C. S. McConnico, of the county of Sumter, State of Alabama, is legal guardian." Comment is unnecessary to show the manifest failure of the administrator to comply with the indispensable requisites of the statute, under which the proceeding was had, as to a description of the heirs and distributees. And this defect was not, even if it could have been, cured by the subsequent proceedings. The evidence taken to show the necessity of the sale, gives the names of the two heirs, whose christian names are not stated in the application, as "Angie" and "Mollie," while the decree of sale states their names to be "Angeline," and "Mary."

Other questions are presented as to the regularity of the proceedings in the court below, which we deem it unnecessary to consider.

The decree of sale is reversed, and the cause remanded.

A. J. WALKER, C. J.—I agree that the appeal in this case should not be dismissed. I think there is no inconsistency between the prosecution of the appeal from the decree for the sale of the land, and the retention of the purchase-money. The reason why there is no such inconsistency is, that a reversal of the decree of sale can not affect the title of the purchaser. If the decree of sale is reversed on the ground of a want of jurisdiction, the purchaser had no title to be affected, and he might be ejected

39

by action, as well in the absence of reversal, as after its accomplishment. If the decree of sale is reversed on the ground of irregularity not affecting the jurisdiction, then the reversal does not impair or divest the purchaser's title. *Wyman v. Campbell*, 6 Porter, 219; *Perkins v. Winter*, 7 Ala. 855; *Evans v. Matthews*, 8 Ala. 99.

If I could proceed on the postulate, that the reversal would affect the purchaser's title, I should hold, that a prosecution of the appeal should not be allowed, without restitution of the purchase-money. The principle upon which appellate tribunals refuse to entertain appeals, unless restitution is made, is strictly analogous to the chancery doctrine, that a party seeking equity must do equity. A party having received money, the retention of which is inconsistent with the reversal of the judgment or decree by virtue of which it was received, can not, standing in that condition, prosecute an appeal. It is inequitable for a party to reverse a judgment or decree while he retains that which he has received by virtue of such judgment or decree, and to which he is not entitled in the absence thereof. Upon what principle of justice, could one receive and retain the purchase-money of land, sold under a decree, and, while so retaining, reverse the decree, if the reversal divested the title ; thus retaining the money, upon the ground that there has been a sale, and regaining the land, upon the ground that the sale is avoided? I regard the authorities as conclusive, that such a thing could not be done. The authorities are the same which are collected in *Prewitt v. Garner*, 32 Ala. 13, 23.—See *Morgan v. Ladd*, 2 Gilman, (Ill.) 414; *Thomas v. Negus, ib.* 700; *Atkinson v. Manks*, 1 Cowen, 692; *Camden v. Edie*, 1 H. Blacks. 21; *Hargraves v. Lewis*, 7 Ga. 110; *Emerick v. Armstrong*, 1 Ohio, 233; *Claves v. Dickinson*, 8 Cowen, 328; *Carter v. Clark*, 3 Edw. Ch. 495; *Cannon v. Hemphill*, 7 Texas, 184.

The doctrine that an appeal can not be prosecuted without restitution, does not involve the idea of a waiver, or of a denial of appeal. It says, you can not equitably sustain an appeal, unless you make restitution. It does not say, you have waived an appeal, nor that an appeal is denied. It simply says justice and right require the performance of

a precedent condition, and, until that condition is complied with, an appeal can not be prosecuted.   As persons not *sui juris* are required to do equity before they can obtain relief in chancery, so may they be required to perform an equitable condition precedent to a reversal in their favor.   I think the decisions fully sustain this view.—*McLeod v. Johnson*, 28 Miss. R. 374; *Kemp v. Pentard*, 32 Miss. 324; *DesLondes v. City of N. O.*, 14 La. An. 552.

What is said in our decisions, as to the prosecution of an appeal by one retaining money paid to him "voluntarily," is not opposed (in my judgment) to my position.   The principle of these decisions is, that when part of a money demand is voluntarily paid, it is a legitimate inference that so much was due ; and there is no inconsistency between a retention of what is thus acknowledged to be due, and the prosecution of an appeal to obtain the balance claimed. Here, there would be an inconsistency between the reversal of the order of sale and the retention of the purchase-money, no matter whether it was paid voluntarily or coercively, if the reversal would defeat the title.

This court speaks of its power to require restitution before it will hear an appeal as "discretionary."   Of course, the court meant a discretion governed by legal principles in furtherance of justice, and not a capricious discretion.

If the infants were prejudiced by the unauthorized or careless reception of the purchase-money by the administrator or guardian, the remedy would be against the tortious trustee, and not by taking the land from the purchaser and retaining in the hands of the guardian the purchase-money.