1832.

Teal
v.
Woodworth.

## TEAL vs. WOODWORTH.

Where six children, one of whom was an idiot, inherited a lot of land as tenants in common, and for the purpose of making partition thereof, it was agreed that A., one of the children, should purchase the shares of two others and have the east half of the lot for his portion thereof, and that E., another of the children, should purchase the share of one of the others, and should also take the share of the idiot in consideration of supporting such idiot for life, and that he should have the west half of the lot for his portion thereof, and conveyances were executed by all the children except the idiot, conveying the premises accordingly; and A. afterwards sold the east half of the lot to T. : *Held*, that as E. obtained no title to the idiot's share of the lot, there was no consideration for his agreement to support the idiot; but that T. was entitled to an equitable partition of the premises, in which the share of the idiot should be assigned to her out of the west half of the lot which was conveyed to E. by the other heirs.

Where a question which has been decided by an interlocutory decision or order, as upon a demurrer, comes again directly before the court upon the final hearing, and is necessarily involved in the decision and decree which is then made, the appellate court, upon an appeal from such final decree, must review the decision upon that question if it was raised by the appellant's counsel on the final hearing in the court below.

If an order overruling a demurrer is not appealed from within the time limited for appealing from an interlocutory order, that order must stand and the defendant must pay the costs of the argument of the demurrer, although he succeeds in an appeal from the final decree involving the same question which was raised by the demurrer.

A conveyance by a feme covert, with warranty, although acknowledged according to the statute, will not operate by way of estoppel so as to pass to her grantee her subsequently acquired interest in the property conveyed.

Where a bill is filed by a creditor of a lunatic against his committee to obtain payment of a debt out of the estate, it is not necessary to make the lunatic a party. But in a suit where there are conflicting interests between the lunatic and his committee which must be settled in the cause, both should be made parties.

Aug. 27.

THIS was an appeal by the defendant, E. Woodworth, from the decree of the vice chancellor of the eighth circuit, founded upon the complainant's bill only. S. Woodworth, the father of the defendant, died in 1823, seised of 100 acres of land in the county of Cayuga, leaving the defendant and five other children his heirs at law, one of whom was an idiot. A few months after the death of the father, all the children except the idiot

agreed upon a disposition and division of the lot, by which Abner, one of the sons, was to have about 50 acres of the east part of the lot, and was to pay to two of his sisters two hundred dollars each for their respective interests in the estate. The defendant, E. Woodworth, the other son, was to take the residue of the lot and pay to another sister two hundred dollars for her interest therein. And as a compensation for the interest of Lydia, the idiot, in the lot, the defendant was to support and maintain her during her natural life. This agreement was carried into effect by the execution of conveyances by all the heirs except the idiot. The defendant then agreed to give the husband of one of his sisters two hundred dollars to support the idiot for life. And to secure that sum, and the two hundred dollars due for the wife's share in the estate, the defendant gave the husband a bond and mortgage on the west part of the lot which had been thus conveyed to the defendant under the agreement. In 1824, the complainant purchased of Abner Woodworth the 50 acres of the east part of the lot, and paid him $1300, for the same, with the knowledge and consent of the defendant. Previous to that time the defendant had rescinded the contract with his brother-in-law for the support of the idiot, and had assumed to support her himself. In September, 1827, the defendant caused proceedings to be instituted in the equity court of the seventh circuit, upon which Lydia was found an idiot. It was also found by the inquisition that she was seised of the undivided sixth part of the 100 acre lot of which her father died seised ; and the defendant was by that court appointed her committee. The bill also alleged that the defendant was proceeding by petition in the equity court to obtain authority to sell the idiot's interest in the lot, with a view to compel a partition so as to deprive the complainant of some part of his 50 acres, and without reference to his just rights as between him and the defendant. It was also stated in the bill that the defendant had filed an inventory, as such committee, by which he claimed that the idiot was largely indebted to him for her support and maintenance, over and above the rents and profits of her interest in that part of the lot occupied by him. And the complainant prayed that

the defendant might be perpetually enjoined from taking any measures by which the share of the idiot in the lot might be set off from the complainant's fifty acres, and from taking any measures by which such share might be sold before a partition had been made with a due reference to the complainant's rights, and for general relief.

The defendant demurred to the bill for want of equity ; but the demurrer, upon argument, was overruled with costs. From that decision of the vice chancellor the defendant appealed, but owing to some irregularity the appeal was afterwards dismissed.    The defendant having neglected to put in an answer, according to the order of the court, the cause was subsequently brought to a hearing upon the bill taken as confessed.    And after argument of the case by the counsel of the respective parties, the vice chancellor decreed that the defendant should give to the complainant a bond and security to indemnify him and his heirs and assigns against any loss or damage which might be sustained by reason of any partition, sale, or leasing of the land of the idiot, which might thereafter be made by order of this court upon any application made or to be made in her behalf; that the injunction which had been issued, restraining the proceedings of the defendant, should remain in force until the further order of the court ; and that the defendant should pay the costs of the suit.

*W. H. Seward,* for the complainant.

*G. C. Bronson,* for the defendant.

The Chancellor.    No regular appeal having been entered from the order overruling the demurrer, within the time allowed by law for appealing from an interlocutory order, that decision of the vice chancellor cannot be reversed on this appeal from the final decree.    That order must therefore remain in full force ; and the complainant is entitled to his costs of the argument of the demurrer, whatever may be the final result of the appeal as to the merits of the cause.    But if there is no equity in the complainant's bill, nor any thing which could entitle him to any kind of relief, this decree cannot be sustained.

That question arises upon the bill itself, in the same manner as if it had been taken as confessed in the first instance without the intervention of a demurrer. Where the vice chancellor has already decided the question deliberately upon the argument of a demurrer, and has overruled the demurrer on the merits, he would not perhaps review his decision upon the final hearing, although the same question was raised upon the bill as confessed by the defendant. But where the same point, which has been decided upon an interlocutory order or decree in a previous stage of the cause, comes again directly before the court upon the final hearing, and is necessarily involved in the decree or decision which is then made, the appellate court must review the decision upon that point if it was actually raised by counsel upon the final hearing in the court below. Upon the same principle, where a court has deliberately examined and settled a legal question in one suit, it will not afterwards listen to an argument of the same question, although it should arise in another suit and between different parties. The appellate court, however, would in that case be compelled to examine the correctness of the decision in reference to the judgment or decree last entered; thus incidentally reviewing the decision in the first suit. Most probably all the parties to the agreement of September, 1823, acted under a misapprehension as to their rights, and mistook the legal effect of the arrangement which was then made. As Lydia had been an idiot from her birth, there was no way in which she could, by any act of her own, dispose of her property or change the course of descent. And they undoubtedly acted on the supposition, that if a provision was made for her support during her life, the reversion of the property would belong to them, and that they could convey a good title to it subject to her life estate. As to this, however, they were under a mistake. Although the brothers and sisters were the heirs presumptive to the estate of the idiot, they had no interest therein which could be conveyed during her life. And the three sisters being married women, could not execute any covenants of warranty which would operate upon them by way of estoppel, so as to make any estate which might

1832.

Teal
v.
Woodworth.

come to them afterwards, by descent or otherwise, enure to the benefit of the grantees. Again; if either of the brothers or sisters should die before the idiot, the estate of the idiot would, upon her own death, descend directly to the next heir, who could not be affected by any lineal or collateral warranty of his ancestor, or the person through whose blood he derived his title by descent. (1 *R. S.* 739, § 141.) The legal result of the arrangement is, that one sixth of the whole lot belongs to the idiot and those who may be her heirs at the time of her death, if the same should not be sold under a decree or order of this court previous to that time. And if the defendant is compelled to support the idiot in the mean time, he will receive no equivalent therefor, and will not be entitled to her share of the estate at her death. There is nevertheless an equity in behalf of this complainant, that in the partition of the estate the share of the idiot should be assigned to her out of the west part of the lot which was conveyed to the defendant in the division. The complainant having purchased the land conveyed to Abner, and paid for it in good faith supposing he was obtaining a valid title to the whole, must stand in the place of Abner as to any equity which existed in his favor against his brother in relation to the partition of the estate. And the rights of the idiot will be preserved whether her share is assigned to her out of the one part of the lot or the other. Under the agreement Abner bought the shares of two of the sisters, which entitled him to one half of the lot; and yet, by the conveyance, he only obtained the legal title to five sixths of that half. The defendant on the contrary only purchased and paid for the share of one of the sisters, which, with his own share, gave him a right to only two thirds of the other half: whereas, by the conveyance, he obtained the legal title to five sixths of that half; that is, the one sixth which was purchased and paid for by Abner. If no conveyances had been executed, and an equitable partition was now to be made between Abner and the defendant and the idiot, one half of the lot would be assigned to the former, and the other half would be divided between the defendant and the idiot, in the proportions of two thirds to the former and one third to the latter. And if the complainant's bill had

been properly framed for that purpose, and the necessary parties were before the court, such is the relief to which he would have been entitled upon the facts stated in the bill. To enable the court to make such a partition, however, it is necessary that all the parties having an interest in the estate should be before the court. In the case of *Brasher* v. *Van Cortlandt*, (2 *John. Ch. Rep.* 242,) where a bill was filed against the committee of a lunatic, in his character of committee, to obtain the payment of a debt of the lunatic out of his estate, Chancellor Kent decided that it was not necessary to make the lunatic himself a party. But in a case like the present, where the individual who happens to be the committee has a personal interest in the controversy, and where such interest may or necessarily must conflict with that of the lunatic, the latter should be a party to the suit, so that the court might assign him a guardian to appear and protect his rights as against the committee.

As the defendant acquired no title or interest whatever in the idiot's share of the real estate in this case, the agreement on his part to support the idiot was wholly without consideration, and void. It cannot therefore be enforced, either at law or in equity. But as he has had the use of the idiot's interest in the one sixth of the whole lot, he is answerable for one third of the rents and profits of the west half, of which he has been in possession, as an off set against his claim for the maintenance of the idiot in the mean time. The decree of the vice chancellor is manifestly wrong, inasmuch as it compels the defendant to indemnify the complainant against any order or decree which may be made for the sale of the estate of the infant, and also against all costs. The case made by the bill, although it shows that one third of the west half of the lot should in an equitable partition be appropriated as the share of the infant in the whole estate, forms no foundation for a claim against the defendant personally for an indemnity ; particularly as to the costs which must necessarily arise on a partition of the estate. As both parties were under a mistake in supposing that they could make a valid division of the estate so as to give the idiot's share to the defendant as an equivalent for her support, there can be no good

reason for charging the defendant with the whole costs of the partition suit which may be necessary to correct that mistake and to protect the equitable rights of both parties. The inequitable claim set up by the defendant, to charge the complainant's half of the estate, as to which the allegations in the bill, for the purposes of this decision, must be taken as strictly true, might form a ground for charging him with the costs of this suit if it had been properly brought. But even that is questionable, as a partition suit seems to have been necessary in any event. As the idiot has no property for her support except her interest in this lot, that interest must be sold for that purpose; the defendant being under no legal or moral obligation to support her out of his own estate, without any equivalent. The committee, however, should not be permitted to sell that interest without express notice to the purchaser of the equitable claim which the complainant has to have the whole of this share taken from the west part of the lot. That direction would of course have been given to the committee, if the complainant had petitioned the court for that purpose in the matter of the idiocy. That, however, would not have protected the equitable rights of the complainant, if the defendant in the mean time had sold the west half of the lot to a bona fide purchaser who had no notice of the complainant's claim to an equitable partition.

The decree of the vice chancellor must be reversed. And as it appears to be impossible to make any decree on the bill as it now stands, the case must be remitted to the vice chancellor, with directions to permit the complainant to dismiss his bill without costs and without prejudice to his right to file a new bill against the defendant and the idiot for an equitable partition of the lot between the parties according to their respective rights; or to permit him to apply for leave to amend the present bill, at any time within three months, as he may be advised. Neither party is to have costs on this appeal. And as the defendant will have an opportunity to make a defence to the bill if it is amended, the amendment, if granted, is to be without costs to either party.