Chief Justice Robertson
delivered the Opinion of the Court.
Nathaniel Hart, who owned several tracts of land, and also held a bond for a conveyance of the legal title to a tract of four hundred acres in the county of Clarke, died in the year 1782, having first published a last will *388 in which, among other things, he directed his executors “ to give to each of (his) nine children ” — of whom Keziah Thompson, then the wife of Lawrence Thompson, was one — “a good tract of land not to exceed one thousand acres. ”
Shortly after the testator’s death, Lawrence Thompson, having obtained possession of the title bond for four hundred acres of land, sold the entire tract to Robert Peebles, who afterwards, in 1787, obtained a conveyanee of the legal title therefor from Nathaniel Bullock', the obligor in the bond, and to whom the land had been previously, granted by the Commonwealth of Virginia. Some time before the date of the deed, Peebles had settled upon the land, as purchaser, and he and his family and other persons claiming under him have continued to occupy it ever since.
In 1809, Lawrence Thompson and the heirs and devisees of Nathaniel Hart, deceased, made a distribution among themselves of lands subject to allotment under .the will, and respectively signed, sealed and delivered a written memorial thereof, commencing thus:—
“ The following lands have been allotted to the heirs <! of Nathaniel Hart, deceased — ■
“ To Lawrence Thompson and wife four hundred acres <( in Clarke county, sold to Peebles. ”
Afterwards, in the year 1812, Keziah Thompson, still being covert, filed a bill in chancery, by her next friend, against the heirs and administrator of Robert Peebles, and also against Lawrence Thompson, and Nathaniel Bullock, and one John Peebles, who had purchased a small portion of the four hundred acres from Robert Peebles. The bill charged that L. Thompson, the husband, had surreptitiously obtained the possession of the title bond, after the testator’s death, and had, without any authority, sold the land to Robert Peebles; and, averring also, that the complainant Keziah had an equi- ■ table right to the land under the allotment made in 1809, and in which she had concurred, and that she had never assented to the sale made by her husband — prayed for a conveyance of the legal title to herself, and for general relief.
First decree.
Proceedings subsequent to the first decree; final decree, and writ of error.
John Peebles and the representatives of Robert Peebles filed answers, denying the equity assorted in the bill, and resisting the prayer for relief upon various grounds, one of which was lapse of time.
In 1822,'the Circuit Court made a decree directing John Peebles and the heirs of Robert Peebles to convey to the complainant, on or before the 1st day of the next succeeding term, their legal title to the four hundred acres of land, and to acknowledge the conveyance before the clerk of the Clarke county court, to be produced “at the hearing of (the) cause” — adding that, “ the ques- “ tion of costs and all other matters áre reserved till the “final hearing, and the cause continued till next term. ”
At the next term — upon the petition of some of the heirs of Robert Peebles, suggesting that they had attained twenty one years of age since the filing of their answers — they were permitted to file a supplemental answer in the nature of a cross bill; in which, among other things, they alleged that Nathaniel Hart, one of the testator’s sons, whom they made a defendant, had obtained from the complainant a conveyance of her interest in the four hundred acres of land. This answer and cross bill seems to have been filed and answered without any objection; and the suit, having been afterwards prosecuted and defended with the apparent acquiescence and concurrence of all parties, was, by mutual consent, revived, in 1826, against the heirs of John Peebles, he having, in the mean time, died; and finally, the decree of 1822 (as we understand the record,) having been set asicjte at the September term, 1827, and the Court, having, at the September term, 1828, refused to allow further time to make the heirs and devisees of Nathaniel Hart, deceased, parties — a final decree was rendered, during the latter term, dismissing the bill without prejudice.
To reverse this last decree, this writ of error is prosecuted, by Keziah Thompson; who urges a reversal of it, not only because, as she insists, it is erroneous in itself, but also because, as she also insists, the decree of 1822 was final and beyond the control of the Circuit Judge at a term subsequent to that at which it was rendered.
Plea to am. e.— the statute of limitations; replication — pltff’s coverture until within 2 years of the impetraron of the writ; rejoinder — that pit f, pending the suit in the court below, had transferred all her interest in the matter in contest to another party, who was under no disability, & that the plaintiff was thenceforth, and as pit f in error, a mere nominal party: query, as to the effect of this state of fact, as regards the saving in the statute But the deeds relied on as evidence of the transfer, being adjudged invalid, the rejoinder is adjudged insufficient, and the plea overruled.
The sole deed of covert is void.
A deed executed by husband and lid as to her, unless the deed, cate of her privy acknowledgment are recorded, as required by law.
The writ not having been issued for more than three years succeeding the date of the decree of 1828, the defendants in error pleaded the statute of limitations in this Court, and the plaintiff, having, in her replication, relied on her subsisting coverture until within two years preceding the impetralion of,the writ, they rejoined that Nathaniel Hart, as party in the suit, holds her entire interest, and that, therefore, she being only a nominal party, her coverture should not be deemed an available answer to the plea of the statute of limitations. Issue being concluded on that rejoinder, the whole case, as thus presented, was at onGe submitted to the Court.
Hart’s attitude in the record is not such as either to have made it necessary that he should have been the only plaintiff, or even a co-plaintiff in error, or as to divest the actual and proper plaintiff of the privilege to which a feme covert, suing as both nominal and beneficial party, would be entitled. In his answer to the cross bill, he admits that he had, pendente lite, bought her equitable interest in the four hundred acres of land, and exhibits, as evidence of their agreement, two deeds — one purporting to have been executed by her alone, in the year 1814, and acknowleged before the clerk of the Woodford county court; and the other purporting to have been executed by herself and her husband, in the year 1816, but never legally recorded, and both of which contain a general warranty of the title. In her answer to the same cross bill, she admits the execution of the sole conveyance of 1814, but is silent as to any other deed or agreement. s,
Now, as the deed of 1814 was a sole conveyance by a jeme covert, and no privy examination of her appears ever to have been taken or recorded, that deed is void; and against her, there is no proof of the deed of 1816; but bad that deed been proved, it could not have passed any interest she held in the land; because, according to the well established doctrine of this Court, it was void as to her in consequence of the non-registration of it, and of her separate acknowledgment, within the time and in t¡ie mo¿e prescribed by law. If, therefore, she should recover the land in this suit, she could not be compell *391 ed to convey it to Hart, who has, in judgment of law, no claim to it, either valuable or available, arising from his alleged agreements with her.
The court made a decree, directing deft s to convey on or before the first day of the next term, and acknowledge the deed before the clerk of the county court, to be produced at the final hearing of the cause— adding “the ques tion of costs, and all other matters, are reserved till the final hearing, and the cause continued till the next term : ”— held that this was not a final decree, settling the rights of the parties; hut an interlocutory order only, subject to be set aside at any subsequent term.
We are therefore, of the opinion that, according to the legal effect of the record, she was not only a nominal, but also a beneficial, party, and that Hart has had no such right as should preclude her from the protection to which, as the sole party, the disability of coverture until within two years preceding the date of her writ of error, should entitle her to claim in her own behalf and for her own benefit. We need not suggest, therefore, whether her disability would have no effect on the stat-. ute of limitations, had the record shown that Hart was the beneficial anci the only the nominal party without any right.
Her counsel insists that the decree of 1828 should be reversed: jirsi — because, as they zealously argued, the decree of 1822 was final and conclusive; and secondly— because, there being a defect of necessary parties, the Circuit Judge erred in hearing the cause without giving further time to make the proper parties.
But neither of these grounds is, in our opinion, sufficient to entitle the plaintiff to a reversal.
First, the decree of 1822 does not purport to have been final. It was undoubtedly understood and intended to be interlocutory only, and is not, in our judgment, entitled to any other constructive effect. No process for enforcing it could have been issued before the next term of the Court that rendered it; whether the conveyances directed by it should be made or not, depended altogether on the voluntary ¿lection of the parties who were directed to make them — unless in the event of their failure to make them, the Court, upon ascertaining such failure, had, at a succeeding term, made another decree, or had ordered its commissioner to make the conveyances; the decree did not settle the rights of the parties; it does not even suggest that the Court had decided that Mrs. Thompson was entitled to a decree for the land, but — as may be more reasonably understood — only made provision for conveyances, to be ready for confirmation, on the final hearing of the whole case on the *392 merits, ill the event of a decree then for such surrenders of the legal title; and therefore, all other matters, excepting the provisional execution of deeds, or rather prepartition of them-, were expressly reserved until the “ final hearing.” And this construction of the decree is corroborated by the subsequent conduct of the parties, who all seemed to consider it, as the Circuit Judge, himself understood it and intended it to be, not final but interlocutory only; and hence the suit was permitted to progress, and was further prepared and revived, many terms after the date of that decree; and all this was done without objection.
Infant defendants have a right to open a final decree against them, upon coming of age; and altho’ a petition by def ts against whom a decree was rendered, while they were infants, was informal and irregular, as no ohjection was made to it in the court below, none will be indulged here. Comp ts objected to a hearing, for want of some necessary but offered no amendment making those parties who ought to have been in original bill, filed 18 years before, The court refused to continue the case, & dismissed the bill in this there was no abuse of discretion; neither would there have amendment had then been offered'
Besides, some of the infants wére not regularly before the Court, and had a right, upon petition, to open the decree had it been final; and, even if any valid objection could have been made to the filing of the petition and supplemental answer and cross bill, at the term when they were filed, and even though they were not in the most appropriate form — nevertheless, as they were filed without objection, and the cause thereupon progressed, and the decree of 1822 was finally set aside — an objection, now for the first time, to either the time or the mode of opening and setting aside that decree, comes too late.
Second. Nor did the Circuit Court err in hearing the case. No amended bill was tendered; nor was there even anJ °®"er to make other parties; and therefore, although.the plaintiff in error objected to a hearing, because, as ^en, for the first time, suggested, all the proper parties had not been made, it was certainly not the duty of ^le Court to continue the case upon any such suggestion, or 'for any such cause. And had an offer been then made, to file an amendment for making all proper Part'es’ Court in the exercise of a sound discretion, might have said that it came too late, and the more es» peeially as the suit had been depending for about eigh1 ' . r ° . ° teen years, and the necessity of other parties had been manifest from the beginning, and some of the persons who ought to have been made parties had been used by the complaining party as witnesses to establish her equity.
The object of to obtain the e3 Sal title to land for which her, father held a title division among [she had her. her co heirs, her, were ne^hJbond^as transferred before the statute of assignments, & passed only an equity, the heirs oftheoriginal obligee were necessary parties.— And the want of these parties, 18 years after the bill was filed, was good ground for dismissing it. The reason assigned by the inferior court for dismissing a bill, is not material here; if any sufficient reason for the decree appears, it must be affirmed.
A man died seized of various parcels of land, and held a title bond for another; which latter, in the division of his lands, by a written agreement signed by the heirs, Was allotted to the husband of one of them and to her. This made the husband a co-tenant the entirety; gave him the use of the whole during the coverture, and a right to the whole by survivorship. And he having sold the land (before the allotment,) by a transfer of the bond, of which he had obtained possession, —all his interest inured, by estoppel, to his vendee. And, query — whether the wife could maintain any bill for the land, during the coverture; for time, after twenty years, would bar any suit 'by the husband against his vendee, and where time bars the suit of the husband, it bars the joint suit of husband and wife during the coverture. with the wife, of
The plaintiff in error derived eight ninths of her claim to the four hundred acres from her co-heirs; and therefore, as they had never legally assigned to her the bond ’ , , ,, • , .1 on Bullock tor a title, they were evidently necessary parties to the suit brought for asserting the equitable ti-tie which descended to them. And as Bullock’s bond had been executed to one Hoy, as the obligee, and Hart, the testator, claimed only an equitable right to it by a contract made when it was not legally assignable, there can be no doubt that Hoy’s representatives, also, were i indispensable parties. But, in opposing the hearing of the cause, the plaintiff’s counsel made no suggestion as to Hoy’s representatives, but only suggested that the heirs of N. Hart, deceased, were necessary parties.
It seems to us very clear, therefore, that the Circuit Judge did not abuse a sound discretion in overruling the objection to the hearing of the cause. And it is equally clear that there was such a radical defect of parties as justified a dismission of the bill without prejudice.
It is said, however, that the bill was not dismissed for want of proper parties, but only because, in the opinion of the Circuit Judge, the complainant had no right to maintain any suit during the life of her husband, who was then still living. The particular reason which may have influenced the Circuit Judge is not now material, because, if there was good cause for the decree as rendered, the fact that an insufficient one was assigned, would be no ground for reversal.
But we are not sure that the plaintiff, if she had any available interest, had such a separate interest as could have been decreed to her in this suit, as long as her husband lived. ¶
The allotment having been made to the husband and wife jointly, she could not have derived from it any better or greater interest than that of a co-tenant with him *394 of the entirety, and he was entitled to the entire use during the coverture, and to the whole interest if he should survive her; and he was entitled for life, also', to the use of her interest-of one ninth by descent. But so far as he was entitled, either as husband, or as tenant by the entirety, his right inured to the heirs of his vendee, by an equitable estoppel; and he seemed to be determined that the estoppel should operate as effectually as it could. Moreover, had he attempted, with her in this suit, to assert any claim adverse to the repose of his vendee, he would'have been barred by lapse of time; and he being thus barred, she-would have been also barred during coverture ; for it has been decided that any limitation that would bar the husband’s right to sue in right of his wife, or jointly with her, will equally affect her right to maintain a suit during her eoverture.
The husband of one of several heirs, having got -possession of a title bond that the ancestor had held, sold the land, and passed the bond to his vendee, who obtained the legal title. More than 20 years after-wards, in a division of lands among the heirs, that parcel was allotted to him who sold it and his wife, the fact of the sale being referred to in the instrument of allotment: this allotment, thus made, so long after the purcha•ser'had obtained the title and possession, the court •think, ought to be -deemed a confirmation of his title; not as conferring an adversary right upon -the co-heir whose husband had soldtheland; and her bill to recover the land, they incline to think, could not be sustained.
*394 Besides, 'so far as the allotment by th,e heirs of Hart conferred any right, it should, as we are strongly inclined to think, be-construed as vesting none-whatever in Mrs. "Thompson; because, as it was not-made until more than twenty years after the conveyance of the legal title by Bullock to Robert Peebles, when — the latter'being presumed to have held adversely after he obtained the legal title — the entire fight-of Hart’s heirs, some of whom had labored under no disability, may have been lost by lapse of time; and as, -moreover, it recognizes the sale by Thompson to R. Peebles, the allotment seems to have been intended as a confirmation of that sale, and not as a transfer to Mrs. Thompson, of any fight inconsistent with it; and the more especially, as it was made not only to'herself, but also to her husband who could not disturb his vendee, and was almost certainly made to them because he had sold the land for their joint benefit, and therefore, the other heirs deemed it more proper to charge them, in the distribution of the testator’s lands, with that tract, than unnecessarily to disturb Peebles by asserting their own claims to it, and disaffirming the sale, and allotting to Mrs. Thompson some other tract.
It would rather appear to us, therefore, from the record, as now exhibited, that Mrs. Thompson having *395 shown no other right .to this tract of land, prior to the year 1809, than that of one of her father’s heirs, and the allotment made in that year not appearing to have vested in her any other or greater interest, she had no just cause to complain of the decree dismissing her bill without prejudice; for had there been no defect of parties, we do not perceive any ground upon which she could have been entitled to any decree against Peebles’ heirs, for the four hundred acres of land, or for any interest therein. According to the facts now appearing,if she be not concluded by her assent to the allotment as made, and for the purpose we have supposed, her only remedy would seem to be one against her co-heirs and codevisees, for reclamation pro tanto, in. consequence of the allotment to her of land to which they had no right, and which she could never enjoy — either because no right was conferred on her by the allotment, or because the right allotted to her had been-previously lost by lapse of time.
But even if her equity in this suit had been apparently meritorious and available in a proper state of preparation, we would not reverse the decree dismissing her bill without prejudice; and therefore, that decree is affirmed.