# GARNER *vs.* PREWITT.

**[BILL IN EQUITY FOR SETTLEMENT OF PARTNERSHIP.]**

1. *What constitutes final decree.*—A decree which leaves unsettled the equities relating to two items of account, as to which a reference is ordered, is not final, although it ascertains and determines all the other equities of the case.
2. *Consensus tollit errorem.*—Where the parties to a pending chancery suit enter into an agreement respecting the matters of account in controversy between them, and the chancellor's decree is thereupon rendered in accordance with such agreement, neither party can be heard to assign error in reference to these matters.
3. *Voluntary execution of decree.*—In a chancery cause, the appellant will not be permitted, while retaining the benefits which he has derived from a voluntary execution of the decree or any particular branch of it, to assign errors in reference to it, when the appellees cannot be placed *in statu quo*, and when the court cannot see that no injury will result to them ; but, in such case, the court will strike out the assignments of error relating to that part of the decree which has been thus executed, or, if the whole decree has been executed, dismiss the appeal.
4. *When decree as to costs is revisable on error.*—The question of costs, in a chancery cause, is revisable on error, when the record discloses a substantial ground of appeal.

APPEAL from the Chancery Court of Franklin.

Heard before the Hon. A. J. WALKER.

This bill was filed by John Prewitt and Richard Prewitt, the appellees, against Argy L. Garner, and sought a settlement of partnership accounts relating to a plantation and slaves, which the three parties had bought as partners, a division of the property, &c. The defendant, in his answer, admitted the existence of the partnership, and averred his willingness to enter into a settlement. The plantation and negroes were bought on a credit; the defendant was the managing partner, and had control of the plantation ; and all the questions in the case grew out of the matters of account respecting the expenses of the plantation, the proceeds of the crops, &c. The bill was filed on the 6th February, 1852, and the defendant's an-

swer on the 23d March next thereafter. At a special term, held on the 24th March, 1852, a receiver was appointed, who was authorized to take charge of all the partnership property, to manage the plantation business, and to collect the debts due to the firm. At the May term, 1853, "on motion of the parties, and by consent," a reference to the master of the matters of account was ordered; and it was also ordered, "by agreement of the parties, that the cause be further heard at an extra term of the court to be held on the second Tuesday in December, 1853." At the special December term, it was ordered, "by agreement of the parties, that the cause be tried, on the coming in of the master's report, at any time that will suit the convenience of the chancellor." At the May term, 1854, the master's report having been filed, the cause was "submitted for decree, upon bill, answer, pleadings, proof, master's report, exceptions thereto, and exceptions to the testimony;" and it was agreed that the chancellor might render his decree in vacation. At the same term, the parties entered into a written agreement respecting "the settlement of their partnership matters involved in said cause, and particularly with reference to the sale of the partnership property;" which, "with the sanction of the chancellor," it was agreed, should "constitute a part of the decree."

The chancellor rendered his decree on the 3d November, 1854; incorporating in it the written agreement above referred to, and directing a sale and division of the partnership assets in accordance with its terms; deciding all the exceptions to testimony, as well as the numerous exceptions to the master's report; ordering a new reference to the master, to state an account between the parties on the principles settled in the decree; and directing that all the property should remain in the custody of the receiver, until the sale and division by the master pursuant to the terms of the written agreement of the parties. Under this decree, the parties made a division among themselves of the notes and other assets of the firm, which is particularly described in the opinion of the court; and the lands and slaves were sold by the master. At the

May term, 1855, the sale and division were reported to the court, and confirmed by it; and the final decree in the cause was then rendered.

On the 31st March, 1857, the respondent sued out an appeal from this decree; and he here assigned as error the ruling of the chancellor on several of the exceptions to the master's report, as well as in the rendition of the final decree, and in the taxation of costs. A motion was submitted by appellees to dismiss the appeal, on the ground that it was barred by the statute of limitations; or, in the event the motion to dismiss should be overruled, to strike out the several assignments of error, on the ground that the decree has been executed by the parties, and the appellant cannot now place the appellees *in statu quo.*

R. W. WALKER, with whom were WM. COOPER and L. P. WALKER, for the motions.—1. The decree rendered at the November term, 1854, settled all the equities involved in the case, and was final in its character.—2 Ala. 170, 573; 6 Ala. 141; 13 Ala. 681; 16 Ala. 793; 24 Ala. 697. That decree being final, the right to have it revised on error is limited by the statute (Code, § 3040) to two years from its rendition. That it is the decree sought to be revised is shown by the fact, that most of the assignments of error are predicated upon it. If any error intervened, it was in the matters determined by that decree. If that decree was final, it is not open to revision on the present appeal. 7 Paige, 87, 90; 2 Paige, 413; 3 Paige, 470; 4 Paige, 567; 2 Har. & G. 191, 246.

2. The record shows that the parties have settled their litigation by agreement; and the rule is settled, that this court will not, in such case, investigate the rights of the parties, nor will it revise a decree by consent.—Emerick v. Armstrong, 1 Ohio, 233; Hargraves v. Lewis, 7 Geo. 110; Atkinson v. Manks, 1 Cowen, 709; 3 Edw. Ch. 410; 7 Texas, 184, 194.

JNO. A NOOE, with whom was JAMES IRVINE, *contra.* 1. There was no final decree, settling all the equities be

tween the parties, until the May term, 1855.   The only
matters in controversy were matters of account, respecting
the items with which the respondent was chargeable, and
the credits to which he was entitled; and some of the
most important of these items were not disposed of until
the May term, 1855.   The decree rendered at the Novem-
ber term, 1854, left open two of the most complicated
items of the expense account, and referred them to the
master to be stated on proof.   The duties required of the
master, under this reference, were of a judicial character,
and not simply ministerial; and each party had the right
to have his action revised by the chancellor.   There were
no equities to be settled in the case, except in relation to
these disputed items of account; and that cannot be con-
sidered a final decree which leaves any of them open and
undetermined, to abide the decision of the court upon
evidence not yet taken.   That the decree of the November
term, 1854, has not the requisites of a final decree, see the
following cases: Bank of Mobile v. Hall, 6 Ala. 141;
3 Yerger, 157; 3 Humph. 449; 8 Mis. 53; 12 Gill &
John. 275; 14 Wendell, 539; 15 Peters, 287.; 1 Hill's (S.
C.) Ch. R. 445; 1 Equity Digest, 63, §§ 172, 174; 11 Gill
& John. 362; 2 H. & M. 558, 595; 1 Leigh, 34; 6 Leigh,
378.

2.  The several agreements into which the parties enter-
ed, as shown by the record, relative to the sale and division
of the property, &c., were intended to relieve the court of
the labor which would have been necessary before a
formal settlement and distribution could have been made,
and cannot be considered an implied waiver of the appel-
lant's right to review on appeal the errors and irregulari-
ties shown in the chancellor's decree.   It was perfectly
competent for the parties, after the rendition of the decree
deciding their respective rights, thus to relieve the court
of the ministerial duty of distributing the funds in court.
*Ex parte* Foster, Rice's Equity R. 17; Lashly v. Hogg,
11 Vesey, 602.   The rule of practice established by seve-
ral decisions of this court, refusing to consider assign-
ments of error by a plaintiff who has coerced satisfaction
of a judgment at law, has no application to a chancery

case, in which the decree has been voluntarily executed by the parties.—Tarleton v. Goldthwaite, 23 Ala. 346; McCreeliss v. Hinkle, 17 Ala. 459; Caruthers v. Ross' Heirs, 17 Ala. 821; Logan's Heirs v. Logan's Adm'r, 13 Ala. 659; Dyett v. Pendleton, 8 Cowen, 325; Clowes v. Dickinson, *ib.* 328. There is a plain and marked distinction between this case and those in which the rule now invoked has been applied. In all the cases in which the court refused to hear errors assigned, the plaintiff below was the appellant, and had received or coerced satisfaction of the decree which he sought to have reversed. Here, the defendant below is the appellant, and he has voluntarily paid the decree against him which he complains of as erroneous. He was bound to pay that decree, either voluntarily or compulsorily. If he had paid it under execution, he certainly would not thereby have lost his right to have it revised on error, though the plaintiffs might have been estopped from alleging error in it. No reason is perceived why the voluntary payment of a decree, to save the costs incident to the collection of the money by execution, should be construed an implied waiver of the right of appeal, which would have been unaffected by a payment under legal process.

3. But, if the agreements of the parties should be held. to conclude the appellant from assigning error in the decree, he then offers to restore all that he has received under them, and asks that the cause may be continued in court to allow him an opportunity of doing so.

WALKER, J.—In the decree of 3d November, 1854, it was referred to the register, to ascertain the amount of the annual expenditures on account of the partnership plantation, and also to ascertain the amount annually paid for rope and bagging for the partnership plantation. It is not determined, either in that, or in any previous order, whether or not Garner would be credited with those two items. It is altogether probable that he would be so credited, but it was not judicially determined. The equity of the parties as to two matters was thus left open and undecided. Is that a final decree, which thus leaves

open questions involving, so far as they go, the equities of the parties, even though as to all other matters the equities are ascertained and fixed? We are constrained to decide this question in the negative. That cannot be a final decree, which settles only a part of the equities. If there are one hundred controverted questions of equity, a decree which settles ninety-nine of them, and leaves one undecided, is not a final decree. The cause would have to be set down again for a hearing, and the litigation of the equities of the case on the undecided points might again come up. The principle to be extracted from our decisions is, that if all the equities between the parties are settled, and there remains only a reference to be had for the ascertainment of the amount, the decree is final. We have no decision which characterizes that as a final decree, which only settles a part of the equities in the case.—Garrard v. Webb, 4 Porter, 73; Weatherford v. James, 2 Ala. 170; Kennedy v. Kennedy, 2 Ala. 571; Bank v. Hall, 6 Ala. 141; McKinley v. Irvine, 13 Ala. 681; Ansley v. Robinson, 16 Ala. 793; McCartney v. Calhoun, 11 Ala. 121; McLane v. Spence, 11 Ala. 182; King v. King, 28 Ala. 315; Ex parte King, 27 Ala. 387; Craighead v. Wilson, 18 How. (U. S.) R. 199.

If we look away from our own, to the reports of other States, we will find many decisions, which do not go so far as our own in regarding decrees as final which do not dispose of the entire case; and, perhaps, none which go farther. We cite, without comment, the cases we have examined: Johnson v. Everett, 9 Paige, 636; Cruger v. Douglass, 2 Coms. 571; Kane v. Whittick, 8 Wendell, 219; Hay v. Hay, 1 J. J. Marshall, 497; Thompson v. Peebles, 6 Dana, 387; Lewis v. Outon, 3 B. Monroe, 453; Cook v. Bay, 4 Howard's (Miss.) R. 485; Nesbit v. Price, 1 Hill's (S. C.) Ch. 445; Johnson v. Clark, 4 Ark. 235; Mackey v. Bell, 2 Munf. 523; Cocke v. Gilpin, 1 Rob. (Va.) 20; Taylor v. Read, 4 Paige, 561; Teal v. Woodworth, 3 Paige, 470; Townsend v. Townsend, 2 Paige, 413; Erskin v. Henry, 6 Leigh, 378; Graves v. Graves, 1 Leigh, 34; Atkinson v. Manks, 1 Cowen, 701; Cannon v. Hemphill, 7 Texas, 184. Neither our own, nor any of

the other decisions, would sustain us in holding the decree above named to be final; and we therefore decide, that the decree was not final, and that the period necessary to bar an appeal in the case is not to be computed from its date.

Besides the motion to dismiss the appeal, upon the ground of the statute of limitations, we are asked either to dismiss or strike out the assignments of error, for the alleged reason that the appellant has so acted upon the decrees of the court below that he should not be permitted to seek their reversal.

2. The decree of May term, 1853, ordering an account between the parties; the decree for the sale of the partnership property except the "mountain land;" the division of the proceeds of the sale of the property, and of the assets in the receiver's hands; the extra allowance of five hundred dollars to the register; the placing of two claims in the hands of L. B. Cooper, to be collected for the equal benefit of the partners; the amount of the plantation expenses from the first of 1844, and the expenses for rope and bagging, are all matters as to which the chancellor and register acted in pursuance to, and in accordance with the agreement of the parties. As to them, neither party will be heard to assign error. The maxim, " *consensus tollit errorem*," applies.

3. The decree of November 3d, 1854, settled, with a very slight exception already pointed out, the principles upon which the account between the parties was to be taken, and prescribed the amounts of the great majority of the items on both sides. Upon taking the account, the register found a balance against the appellant of $1718 21, and a balance against John Prewitt, one of the appellees, of $1681 50. After these balances were ascertained, a settlement was had between the three parties, which included a division of the funds and claims in the receiver's hands. Upon the footing up of the calculations on that settlement, there were inequalities of a few dollars, which were at once adjusted by payments in cash. Subjoined to the statement of the settlement is a writing, subscribed by the parties, as follows: " The above notes, assigned to

the parties respectively, have been this day received of A. W. Ligon, the receiver; and the amounts of cash, allotted to each partner respectively, have in like manner been this day received of said receiver by the said parties, and this is his receipt therefor. The said Garner has, on this settlement, accounted for the balance of $1718 21 found against him in favor of the firm, as per the register's report, *and this is his full discharge therefor;* and John Prewitt has, on this settlement, accounted for the sum of $1681 50 charged against him in favor of the firm for the hire of Coleman, as per register's report, and *this is his full discharge therefor.*"

The settlement, and the consequent agreements, make a contract, in which the parties reciprocally received and granted benefits, and executed discharges. The discharge of the appellant from the balance against him, and the similar discharge of John Prewitt, were elements of, and considerations moving to, the contract. For the purpose of that contract, and by that contract, the appellant treated the judgment of the register and the decree of the chancellor, in reference to the account, both against him and against John Prewitt, as subsisting, valid and real; and the fact that they were so treated was a consideration of the contract. It cannot be known, and no court is authorized to pronounce, that, in the absence of such inducement, either of the appellees would ever have assented to the contract. If the balances ascertained had not been treated as subsisting dues, it cannot be known that the appellees would have ever assented to the division of the assets which was made, or would have taken the particular claims which they received, or permitted the appellant to take those which he received; or that Richard Prewitt would have consented to the discharge of the other appellee; or that either of the appellees would have consented to the discharge of the appellant; or that John Prewitt would have consented that the balance, ascertained against him, should enter into the settlement, and be treated as a valid and subsisting demand against him. It cannot be known, that if the decree, so far as it pertains to the account against the appellant and

the account against John Prewitt, should be reversed, no injury would result to the appellees. • If they have obtained any advantage in the contract, they would lose it. John Prewitt may have been prevented by the settlement from contesting in this court his liability for the balance against him. Both the appellees may have been prevented from coming before this court with an argument that the appellant was chargeable still farther than he was charged. The claims received by the respective parties may have proved valuable or worthless to an unequal extent.

Without going farther into this subject, we think it manifest that this court can find in the record no authority for the conclusion, that the appellees would not be injured by the reversal of the decree of the court below as to the matters of account, and that it is impossible for the appellant or the court to restore the appellees to the same situation in which they stood, when they were induced to make the settlement with the appellant by his treatment of the decree as valid and subsisting. We are thus brought to the question, whether an appellant, who has acted upon a particular and distinct branch of a decree, and, by doing so, obtained substantial benefits, which he retains, shall be heard to allege error in such branch of the decree, when his adversaries cannot be placed in *statu quo*, and when we cannot perceive that no injury will result to them. A decision of this question in the negative is demanded by the law, as it is manifestly required by common justice.

It is decided in the two cases of Hall v. Hrabrouski, 9 Ala. 278, and Bradford v. Bush, 10 Ala. 274, that this court would not allow the benefit of a reversal of the judgment of the circuit court to a plaintiff in error, until he had restored the amount collected by execution on the judgment in his favor. The principle of those decisions is, that a plaintiff should not be permitted to reverse a judgment, the correctness of which he affirms by his conduct, until he protects the opposite party from injury by placing him *in statu quo*. This principle was, in McCreelis v. Hinkle, 17 Ala. 459, held inapplicable to a case from the orphans' court, where, upon a decision as to the

amount due, the defendant voluntarily paid it. The payment was assimilated to one made before the judicial investigation was had; and the decision was placed upon the ground, that no injustice or oppression would be involved in permitting a plaintiff to retain that which was thus voluntarily paid, while a reversal was sought in the appellate court. The decision does not assail, but declares an exception to the general rule. In Knox v. Steele, 18 Ala. 815, the principle of the cases reported in 9th and 10th Ala. was reasserted, and applied to a plaintiff alleging error in a decree of the orphans' court. That principle was not held in Tarleton v. Goldthwaite, 23 Ala. 346, not to be applicable to cases arising in the chancery and probate courts, but not to be " necessarily applicable." The reason why it is not necessarily applicable is, that decrees in the chancery and probate courts may consist of several distinct parts; and no injury could result from permitting a party, who had executed a decree and taken its benefits in one particular, from revising the action of the court in reference to some distinct point. Decrees of those courts, consisting of distinct and independent parts, might be reversed in part, and affirmed in part. Such could not be the case in reference to judgments of a court of law. Its judgment is a unity. When the very part of the decree sought to be' reversed has been executed by the appellant, the principle of Hall v. Hrabrouski must apply. Every reason which caused its application there requires its application in such a case. The appellant should always be denied the benefit of a revision of any particular branch of a decree, while he holds on to the benefits derived from its execution; unless, peradventure, it might appear, as it did in McCreelis v. Hinkle, that no injury would result to the opposite party from a different course. In Tarleton v. Goldthwaite, the decree had two distinct features, one requiring the execution of a deed, the other the payment of money. The deed was executed, and the money paid, voluntarily. It was attempted to revise no other than the pecuniary decree, and the cause was retained, as in the case of McCreelis v. Hinkle, for the reason that the court could perceive that no injury

would result to the adverse party from allowing the complainant to litigate the question, whether he was not entitled to more than the amount voluntarily paid. The principle is the same which is declared in Byrd v. Odem, 9 Ala. 755, that the acceptance of a payment voluntarily tendered is no obstacle to the recovery of any additional sum which may be due. In the case of Riddle v. Hanna, 25 Ala. 484, the principle declared in reference to common-law cases was applied to a chancery suit, and our reasoning is thus sustained by an express decision of this court.

This review of our own decisions is sufficient to maintain the position, that an appellant, who has executed a decree, will not be permitted, while he retains the benefit of the execution of the decree, to reverse the decree; this court not being able to see that the appellees will sustain no injury therefrom. It would be useless, in a case where the appellees cannot be placed *in statu quo*, to pause in the appellate proceedings for the purpose of allowing restoration to be made. The appellant having in this case acted upon the decree in such a manner that the appellees cannot be placed *in statu quo*, the proper course is to refuse to hear any assignment of error upon any distinct branch of the decree that has been so executed; and, if the entire decree should be found similarly executed, to dismiss the appeal. We cite, without comment, several other authorities, which sustain our conclusion, and some of which go farther than it is necessary for us to go in this case: Morgan v. Ladd, 2 Gilman, (Illinois,) 414; Thomas v. Negus, *ib*. 700; Atkinson v. Manks, 1 Cowen, 692; Camden v. Edie, 1 H. Black. 21; Hargraves v. Lewis, 7 Georgia, 110; Emerick v. Armstrong, 1 Ohio, 233; Clowes v. Dickinson, 8 Cowen, 328; Carter v. Clark, 3 Edw. Ch. 405; Cannon v. Hemphill, 7 Texas, 184.

The decision in Dyett v. Pendleton, 8 Cow. 325, is no authority here. In that case, the defendant in a judgment gave his note for its amount to the plaintiff, the judgment remaining open for the security of the debt, and then sued out a writ of error. No injury could have resulted to the defendant in error, in the event of a reversal, from the

fact that the note was given; and the plaintiff in error had not received the slightest benefit from any execution of the judgment, which he retained while he sought its reversal.

The appellant did not consent that the chancellor should order a sale of the "mountain land;" but, after the decree adjudging it to be partnership property, the appellant did agree that it might be sold; and after the sale, by agreement between the three partners, a division of money and evidences of debt arising from the sale of that and all the other partnership property was had. The proceeds of the sale of the mountain land was blended in the division with the proceeds of the sale of other property, and a single division of the entire mass was made; and the appellant received a surrender of a large secured debt on himself. For reasons so like those above presented in reference to the account, that it is unnecessary to state them, we decide, that the appellant cannot revise the action of the court below in this branch of the decree.

We do not perceive that the decree of the chancellor, confirming the register's report of the account with the receiver, was either made by consent, or acted upon by the appellant. The appellant has a right to show that there was error in that part of the decree, and the appeal must be retained to allow him an opportunity to do so; and there may be some other matter overlooked by us as to which the appellant has a right to assign errors.

If it should be discovered upon the hearing that there is a substantial ground for appeal, we will be at liberty to revise the action of the court below in reference to the costs.—Alexander v. Alexander, 5 Ala. 517; Randolph v. Rosser, 7 Porter, 249; Hunt v. Lewin, 4 Stewart & P. 147.

The motion to dismiss the appeal is overruled. The motion to strike out the assignments of error is sustained, as to the assignments numbered 1, 2, 3, 4, 5, 6 and 7. The 8th and 9th assignments are left to abide the farther action of this court. One of these last assignments pertains to the question of costs, and the other is the gen-

eral assignment of error in the decree, and would embrace the matter of the affirmance of the register's report stating the account with the receiver.