# Moore, *pro ami, v.* Randolph *et al.*

### *Bill to enforce Payment of Legacies, &c.*

1. *Final decree, what is.* — A decree in chancery which settles only a portion of the equities between the parties is not such a final decree as will support an appeal.

2. *Chancery; what order has not jurisdiction to make.* — The chancery court has no jurisdiction to render a decree against one not a party to the suit, and connected with it merely as *prochein ami,* for the amount bid by the complainants for lands sold under order of the court and reported as paid by the register, who, under agreement of parties, had accepted the draft of the *prochein ami* in satisfaction of the bid.    Execution issued on such a decree is void.

3. *Partial decrees condemned.* — Partial decrees, parcelling out a fund in controversy to one or two of several claimants at one term, and to other claimants at

another term, and so on, are dangerous departures from correct practice, and virtually deprive a party complaining of error of all benefit of appeal.

4. *Same; when appellate court will interfere.* — In such cases the supreme court will, on the application of a party, protect his right by the issue of such remedial writs as may be necessary to insure justice in the particular case.

5. *Appeal, matter of right, not controllable by chancellor.* — An appeal in a proper case is matter of right, and when taken from a decree for payment of money, the register must ascertain, at his peril, whether to allow it. Orders or instructions from the chancellor, prohibiting the granting of the appeal, are void, and will not protect the register, if he disallows an appeal in a proper case.

6. *Appeal and supersedeas; decree during void.* — When a cause is pending in the supreme court on appeal from a moneyed decree, in which the appellants executed a good and sufficient *supersedeas* bond, decrees made by the chancellor affecting the equities and rights of the parties are void for want of jurisdiction.

APPEAL from Hale Chancery Court.

Heard before Hon. A. W. DILLARD.

In this cause there were two separate matters submitted to the court, on separate motions: first, a motion by appellees to dismiss the appeal on the ground that it was not taken from a final decree; and second, an application by appellants for a *mandamus*, or other remedial writ, directed to the chancellor and register of the court below, for the purpose of staying certain proceedings had therein, after such appeal had been taken and errors assigned thereon in this court.

On the 15th of October, 1862, Jane Randolph died in Greene county, Ala., leaving a large estate; she also left a last will which was duly recorded and admitted to probate, and her brother Richard Randolph, one of the beneficiaries, qualified as executor thereof. All of the debts due from the estate were paid off by him, and most of the legacies; among the legacies unpaid by him was one of two thousand dollars to a Mrs. Beverly. By the 9th clause of the will all her lands in Perry county, Alabama, were bequeathed to her brothers Richard and Robert Carter Randolph, and her sisters Harriet B. and Ann T. Randolph, and Mrs. Lucy Tayloe, to be equally divided share and share alike; the property going to the sisters to be held by them to their sole and separate use, free from the control and not subject to be disposed of or incumbered by their husbands, should they marry. On the 13th of May, 1863, Richard Randolph filed an application to the probate court of said county for an order to sell said lands, for division among the parties interested therein; on September, 14, 1863, the court granted the petition and decreed a sale of the lands, on a credit of one, two, and three years, with interest from the day of sale; on the 24th day of October, 1863, the lands were sold as decreed, and in two parcels: one parcel was bought by one Randolph Speddin, and he executed three notes for the purchase-money, for $8,950$\frac{50}{100}$ each, at one, two, and three years, respectively, with interest from date, payable to Richard Randolph, and also signed by said Richard Randolph as surety

[Moore v. Randolph.]

thereon. There was an agreement entered into between Speddin and Richard Randolph, before the sale, that Speddin should bid off the whole of this parcel at the sale, and afterwards should resell a portion thereof back to Richard Randolph. Pursuant to this agreement, Speddin executed his bond for titles to the portion agreed to be resold to Richard Randolph, and in consideration thereof Richard Randolph executed his three promissory notes to Speddin, payable one, two, and three years after date, respectively, with interest from date for the sum of $4,290 each, and the bond and notes were dated October, 24, 1863. On the same day, and pursuant to a similar agreement with Curry, Speddin made a bond for titles to another part of the parcel purchased by him to Curry, and received therefor Curry's three notes for $1,001 each, payable respectively at one, two, and three years, with interest from date. The other parcel sold by the executor was bought by Robert Carter Randolph, for which he executed, on the same day, his three notes for the sum of $4,964$\frac{9.9}{}$, and payable to Richard Randolph as executor, at one, two, and three years, with interest from date. Each of the four purchasers, respectively, went into possession of the lands so bought by him.

Richard Randolph died September 11, 1866; he left a widow, Mrs. Florence E. Randolph, who qualified as executrix of her husband's will, and on the 19th of May, 1868, she made a final settlement of her husband's executorship of the will of Jane Randolph, showing a balance against her husband as such executor of $1,290$\frac{7.8}{100}$. On the 9th of March, 1868, Thos. C. Clark was appointed administrator *de bonis non* with the will annexed of Jane Randolph; and afterwards, Florence E. Randolph having resigned as executrix of her husband's will, Clark was also appointed administrator *de bonis non* of Richard Randolph's estate, and on the 12th of July, 1868, the latter estate was declared insolvent by the probate court. Robert Carter Randolph, before paying up his indebtedness for the lands purchased by him, went into bankruptcy, and his interest in said lands were purchased by one McCrary.

On the 30th of June, 1870, Harriet B. Moore (formerly Randolph), by her husband and next friend Rittenhouse Moore, and Ann T. Hill (formerly Randolph), by her husband R. J. Hill, all of Hale county, both legatees under the will of Jane Randolph, filed their bill in the chancery court of that county, alleging among other things the foregoing facts, and also that they were the legatees mentioned in the will of Jane Randolph as Harriet B. Randolph and Ann T. Randolph, and that a large portion of their legacies respectively, under said will, was still unpaid, and that a very large sum of the purchase-money for the sale of the lands by the executor was still due, and that

the notes therefor were held by Clark, the administrator *de bonis non* of said Jane Randolph.

The record is exceedingly voluminous, and it is impossible to set forth all the proceedings in it without greatly lengthening this report beyond the ordinary limits. An elaborate contest between the legatees is disclosed as to the amounts received by them respectively, and the widow of Richard Randolph, deceased, propounded her claim for dower in the lands held by Richard Randolph. The administration of the estate of Jane Randolph was removed into the chancery court, and on the 20th day of September, 1872, a decree was rendered ordering sale of the lands purchased from the estate by Spedden and R. C. Randolph, for payment of the balance of the purchase-money unpaid; the lands were sold by the register and bought by complainants, Harriet B. Moore and Ann T. Hill. The register reported the sale to the court, and also reported that the purchasers had paid the purchase-money in full to him, when, in fact, only the costs of the suit were paid in cash; and for the balance the register, as a matter of convenience to the parties concerned, and in view of the fact that the purchasers were more largely interested in the fund than any one else, accepted the check or acceptance of Rittenhouse Moore, the next friend of Harriet B. Moore. On the 12th of December, 1872, the court ordered the register to pay over the purchase-money to Clark, as administrator *de bonis non* of the estate of Jane Randolph, and after the adjournment of court the check or acceptance was delivered to Clark, and by him presented for payment. The payment was refused, and upon petition of Clark, the chancellor, on February 19, 1873, set aside the sale and ordered the lands to be resold. On April 2, 1873, this order was set aside and vacated, on the terms and conditions that, before April 7, 1873, the purchasers at the former sale pay into the Bank of Mobile, to the credit of the register of Hale county, $1,500 in lawful money, and also pay all costs of suit since December term, 1872.

On the 24th of June, 1874, a decree was rendered in favor of Clark, as administrator *de bonis non* of the estate of Jane Randolph, for $502.73 on a settlement of his administration of said estate; and upon Clark's motion to have this amount refunded to him out of the proceeds of the sale of the lands in the hands of Rittenhouse Moore, "It was ordered, decreed, and adjudged that the said Rittenhouse Moore pay, within ten days after the adjournment of this court, to the said Thos. C. Clark, out of the proceeds of the sale of the lands in this cause, which are shown to be in his hands, the sum of five hundred and two $\frac{73}{100}$ dollars, and in default thereof, that an execution be issued by the register for said amount." A decree was also

[Moore *v.* Randolph.]

rendered for costs, and in default of payment by Rittenhouse Moore, execution to issue. The executions issued and were superseded, and an appeal was taken from the decrees so rendered to this court. The amounts due the legatees had not been ascertained and decreed by the court; the dower question raised by the widow of Richard Randolph had not been disposed of; and the estate of Mrs. Jane Randolph had not been wound up.

After the case was brought to this court by appeal, viz., on the 15th of December, 1874, the chancellor ordered the register to reissue the execution in favor of Thos. C. Clark. The register, upon the making of the *supersedeas* bond by Rittenhouse Moore, had recalled the execution then in the hands of the sheriff against him. The chancellor in his decree directing the reissue of execution, recites that the "said notice to the sheriff was not in conformity to law, or the rules of this court, and in direct opposition to the order of this court," &c. On the same day a decree was also rendered in favor of Mrs. Hamilton, formerly Mrs. Beverly, for her legacy against Thos. C. Clark, as administrator *de bonis non* of the estate of Jane Randolph, but to be paid by Rittenhouse Moore out of the proceeds of the lands purchased by complainants, and in default of payment, the lands to be sold by the register, and the decrees paid out of the proceeds of the sale. On the 16th of December, 1874, the chancellor also rendered a decree, "that the register issue an execution in favor of himself against Rittenhouse Moore, the custodian of the proceeds of said sale of lands belonging to the estate of Jane Randolph, deceased," for the sum of $536$\frac{55}{100}$, the amount ascertained by said register to be the dower interest of the said Florence E. Randolph in the interest of Richard Randolph in said lands. The complainants thereupon made application to this court for a writ of *mandamus*, or other appropriate writ, to restrain the proceedings had in the court below subsequent to the appeal to this court.

SMITH & ROULHAC, for appellants, and for motion for prohibition, &c.

WALLER, PITTMAN & WALLER, for motion to dismiss, and in opposition to prohibition, &c.

The motion to dismiss the appeal was granted, the following opinion being delivered thereon by, —

MANNING, J. — In cases of administration transferred from a probate court into a court of equity, "the chancellor

[Moore v. Randolph.]

will take them, in the plight and condition they are in, at the time of the transfer, and proceed with them as in chancery cases, applying the law regulating such estates in the probate court, changing only the mode of procedure, in the same manner as if the cause had originated in his court." *Talia-ferro, Adm'r*, v. *Brown, &c.* 11 Ala. 710; *Hall, Adm'r*, v. *Wilson's Heirs*, 14 Ala. 295. Some legislation, however, is probably desirable in reference to appeals in cases of administration in equity courts. From decisions that may from time to time be made in the course of administration in probate courts, the statute laws provide that appeals may, from time to time, be taken. Rev. Code, §§ 2244 to 2260. Such appeals bring up for revision only the particular points, or matters involved in the decisions appealed from, with so much of the record, and such of the parties concerned in them, as will enable the appellate court to do justice therein, while the administration, in respect to other matters, may in most cases go on without obstruction in the probate court. This facilitates the transaction of the business of estates, in which frequently it happens that the court must act upon many separate questions and claims, of creditors and others, by orders or decrees made from time to time, successively, which decrees, in respect to such particular matters only, are final, and therefore need, if erroneous, to be speedily corrected.

But the statutes do not give such a right of appeal from partial decrees of a chancellor. Rev. Code, §§ 3485, 3486. If the decree settles only a part of the equities between parties in a cause in chancery, it is not final, in the view of this court. A decree which ascertained and determined all the equities except two items of account, in regard to which a reference was ordered, was held not to be final, so as to authorize an appeal. *Garner* v. *Prewitt*, 32 Ala. 13; *Bradford* v. *Bradley*, 37 Ib. 453.

The decree from which the appeal in this cause was taken was not such a final decree as settled all the equities of the case. And the appeal must therefore be dismissed at the costs of the appellant.

The following opinion was delivered on the motion for prohibition: —

MANNING, J. — The acceptance by the register of Moore's check or draft upon himself in lieu of money, for the chief part of the price of the land bought by appellants at the sale of the register, seems to have been the result of an agreement between the parties. Such arrangements may sometimes be advantageous. But the persons who concur in them ought to

be careful not to permit them to embarrass courts in the performance of their duties. It is not allowable that the plaintiffs in a cause shall be suffered without the consent of the court, though by its action, to get possession pending their suit of the subject-matter of it, and then withhold it so as to hinder the court from distributing it according to law among the parties entitled thereto, — as they had invoked it to do. We do not intend by our decision to signify any approbation of such an interference with the authority of judicial tribunals.

Rittenhouse Moore is not, however, either a complainant or a defendant in this cause. Except as to the costs with which his wife, for whom he is *prochein ami*, might be chargeable, he was not within the jurisdiction of the chancellor. He was no more subject to the decrees rendered against him in favor of other persons who are parties to this suit, than a surety for costs in an action in a common law court would be liable to its judgment for the amount of a set-off that might be pleaded and proved by a defendant against the plaintiff. Those decrees, and the execution upon them against Moore, are wholly void.

In respect to the order of proceeding in this cause : it is a dangerous departure from correct practice for a chancellor in a case like this to make, from time to time, partial distributions of a fund in controversy, of which there are several claimants, instead of disposing of it wholly at one time.

The creditors of Jane Randolph had all been paid before this suit was brought. Nothing remained to be done after the property was converted into money, but properly to divide it among the several legatees, devisees, and others entitled thereto, including the administrator *de bonis non*, &c., in respect to any amount that might be due to him after expenditures properly made in excess of his receipts. And this division should be made by a decree or decrees, which settle at one time the equities of all the parties, and so as to allow, before the execution thereof, an appeal by any party interested.

For any errors committed by a chancellor in a cause of which he has jurisdiction, the usual and proper remedy is by appeal taken to this court, and to prevent loss it may be necessary to have the execution of the decree suspended. But an appeal from a chancery court can be taken only from a final decree, which settles all the equities of the case. Rev. Code, secs. 3485, 3486 ; *Garner* v. *Prewitt, supra.*

The appeal, moreover, must be taken within the time prescribed by law ; and if intended to suspend the operation of the decree, it ought to be taken without delay. Therefore, partial decrees parcelling out the fund to one or two of several claimants at one term of the court, and to one or two others at another term, and so on, directly operate to deprive a party

[Moore v. Randolph.]

complaining of error of the benefit of an appeal. He must be entitled to protection against the deprivation of a right so invaluable. A case is presented in which this court should grant redress by one of those remedial writs which the Constitution expressly authorizes it to employ in order that it may exercise " a general superintendence of inferior jurisdictions." Const. Art. VI. sec. 2. See, also, *Ex parte Morgan Smith*, 23 Ala. 94.

Under our law (Rev. Code, secs. 3485, 3490, 3491) an appeal in a proper case is a matter of right, and when it is taken from a decree for the payment of money it pertains to the register, and not to the chancellor, to determine whether it shall be allowed or not. Orders or instructions from the chancellor prohibiting the granting of it are void, and will not protect the register from responsibility for refusing an appeal to a person entitled thereto. If he disallows or denies it, he does so at his peril.

And when an appeal is in fact taken from a court of chancery to this court, the cause and all the parties to it are brought into this court. The controversy is drawn *ad aliud examen*. And while it remains here the chancellor has no jurisdiction to make any decree upon the equities of the parties which shall change their rights in the subject-matter.

Whether the appeal is wrongfully granted or not, it is for this court, not the chancellor, to determine. Hence, while the cause is actually here, upon an appeal from a moneyed decree, in which the appellants have executed a good and sufficient bond, in more than double the amount of the decree, to suspend the execution of it, — as has been done in this cause, — the decrees then made by the chancellor, affecting the equities and rights of the parties, are void for want of jurisdiction to render them.

It is within the authority conferred on this court, on application to it, to prevent the decrees complained of from being carried into effect.

A rule *nisi* will be issued to the chancellor requiring him on the 25th day of March to show cause in this court why a writ of prohibition should not be issued commanding him to desist from further proceeding to have said decrees enforced and executed, and that he vacate and set aside the same.

And in the mean time a temporary prohibition will be issued to restrain the execution of said decrees, until the further order of the court.[1]

---

[1] This case was decided at the January term, 1875. In sending the manuscript to the publisher, it was accidentally placed among the decisions of the June term, 1875.